## DAKOTA HOSPITAL v. COUNTY OF CLAY.

160 N. W. (2d) 246.

July 5, 1968—No. 40,862.

---

*Garrity, Cahill, Gunhus, Streed & Grinnell,* for appellant.
*Raymond A. Lamb,* for respondent.

NELSON, JUSTICE.

Dakota Hospital, plaintiff herein, a nonprofit corporation operating a hospital for the care of the sick within the city of Fargo, North Dakota, appeals from a judgment in favor of Clay County in this action seeking payment for care given by plaintiff to a welfare patient domiciled in Clay County. The case was tried before the court below without a jury. The facts are as follows:

Mrs. Bertha Mohr entered Dakota Hospital on March 8, 1965, as a result of metastatic carcinoma. On March 16, 1955, Mrs. Mohr's husband, John, filed an application with the Clay County Welfare Board for general assistance. The application does not contain a request for any specific form of relief other than general assistance. This was apparently the first time the Mohrs had made application to the county welfare board for assistance.

A medical examination report was also filed with the application for general assistance. The medical report, made by Dr. E. Keith Borden, Mrs. Mohr's attending physician, indicated that prosthesis was needed as well as hospitalization for X-ray therapy.

The Clay County Welfare Board approved the application for general assistance on March 23, 1965, and on April 7 made arrangements for placing Mrs. Mohr in the Americana Nursing Center at Moorhead,

Minnesota. On April 12, 1965, Mrs. Mohr was removed from plaintiff hospital and placed in the Americana Nursing Center. Apparently not satisfied with the care his wife received there, a few weeks later Mr. Mohr requested Dr. Borden to reenter his wife in Dakota Hospital. Mrs. Mohr reentered the hospital May 14, 1965, and on May 15, plaintiff sent a notice of entry to the Clay County Welfare Board indicating that Mrs. Mohr had been admitted under the care of Dr. Borden. The record indicates that there were no further communications between plaintiff and the welfare board until August 30, 1965, at which time one of the hospital staff members spoke with a case worker for the welfare board. The hospital employee testified that the case worker told her that the authorization for Mrs. Mohr's hospitalization would be forthcoming as soon as a medical report was completed, and also that the welfare board was making arrangements to transfer Mrs. Mohr from Dakota Hospital to Our Lady of Good Counsel Hospital, an institution in St. Paul which cares for patients with terminal cancer.

Prior to transferring Mrs. Mohr to Our Lady of Good Counsel, it was necessary for the welfare board to obtain the permission of Mr. Mohr. When Mr. Mohr finally consented to the transfer, Mrs. Mohr's doctor advised against it due to the advanced stage of her affliction. Mrs. Mohr remained in Dakota Hospital until her death on September 14, 1965. The county paid the cost of the funeral expenses.

Dakota Hospital brought suit against Clay County to recover $5,219.60, the cost of Mrs. Mohr's hospitalization from May 14 to her death. Plaintiff's appeal from the judgment of dismissal raises two legal issues: (1) Does a Minnesota county welfare board have authority to provide hospitalization for an indigent in a sister state under Minn. St. 261.21? (2) Is a Minnesota county welfare board prohibited from paying hospital bills under the general relief program without prior authorization?

■ Minn. St. 261.21 provides:

"The county board of any county in this state is hereby authorized to provide for the hospitalization in hospitals within the county or elsewhere within the state of indigent residents of such county who are afflicted with a malady, injury, deformity, or ailment of a nature which

can probably be remedied by hospitalization and who are unable financially to secure and pay for such hospitalization * * *."

The question presented is whether the term "within the state" prohibits the county board from hospitalizing indigents in hospitals in sister states.

It seems clear that the legislature in § 261.21 has restricted the welfare board of any county in this state to authorizing hospitalization for indigent residents of the county only in hospitals located within the county or elsewhere within the state. Thus, defendant's welfare board could neither authorize nor be held liable for the cost of Mrs. Mohr's hospitalization in North Dakota.

As plaintiff points out, this court in In re Settlement of Beaulieu, 264 Minn. 406, 409, 119 N. W. (2d) 25, 28, set out the policy behind the general relief provisions:

"It has long been the unequivocal policy of our state, as declared by our statutes and decisions, that any person living in Minnesota and in need of the commonly recognized necessities of life, who for any reason is unable to earn a livelihood * * * shall be cared for at public expense."

However, this policy must be carried out subject to the conditions imposed by the statutes. There is no ambiguity in the provision of § 261.21 requiring a county welfare board to authorize hospitalization for an indigent resident only in a hospital in the county or in the state. That restriction must govern until such time as the legislature might see fit to provide a more flexible rule. If the practice of using hospitals in a foreign state is to be authorized, the authority must come from the legislature and not from the courts. This court cannot construe an unambiguous statute which does not authorize the practice as doing so.

In view of our disposition of the first issue raised, it is unnecessary to consider the second. We might point out, however, that defendant's reliance on § 256.01, subd. 2(14), in support of its position that prior authorization of hospitalization would be required seems misplaced since that section applies to medical assistance under the "categorical aid pro-

grams." The categorical aid programs differ substantially from the general relief program under which the Mohrs were receiving aid.

The general relief program has no provision like § 256.01, subd. 2(14). Under § 261.22, an application must be filed where hospitalization is sought. However, the general relief program and specifically the hospitalization sections (§§ 261.21 to 261.23) do not prohibit the payment of nonemergency hospitalization where the board has not given prior authorization.

Affirmed.