**Steven I. RADLOFF, et al., Appellants,**

v.

**FIRST AMERICAN NATIONAL BANK OF ST. CLOUD, N.A., et al., Respondents.**

**No. C4–89–2264.**

Court of Appeals of Minnesota.

May 15, 1990.

Review Denied July 13, 1990.

Michael A. Pinotti, Michael A. Pinotti, Ltd., Roseville, John E. Thomas, St. Paul, for appellants.

Jean M. Didier, Kevin J. Hughes, Hughes, Thoreen & Sullivan, St. Cloud, for respondents.

Considered and decided by LANSING, P.J., and PARKER, and RANDALL, JJ.

## OPINION

LANSING, Judge.

The trial court granted partial summary judgment against Steven and Barbara Radloff on claims relating to chemical destruction of their commercial asparagus fields. The court ruled that the majority of their claims were time barred by Minn.Stat. § 541.07(8) (1986) and entered final judgment under Rule 54.02 of the Minnesota Rules of Civil Procedure. We hold that the two year statute of limitations for a person "who applies the pesticide" does not cover entities that contract for the application of pesticide.

### FACTS

In 1976, respondent First American National Bank of St. Cloud began lending money to appellants Steven and Barbara Radloff for a farming business owned by the Radloffs in Morrison County, Minnesota. After several uneventful years, the financial relationship developed problems. The Radloffs, unable to secure adequate financing to continue their operations, were forced into chapter seven bankruptcy on October 11, 1985.

Among the assets that formed the bankruptcy estate were several tracts of farmland. Both the bank and the Radloffs expressed interest in purchasing or leasing

parts of this land from the bankruptcy trustee. The trustee eventually leased about 30 acres of land to the bank for a term running from January 1, 1986 to May 15, 1986. On May 3, 1986, the trustee leased approximately 160 acres of land to the Radloffs for "the 1986 crop year." The parties agree, at least for the purposes of this appeal, that the land leased to the bank was within the legal description of land subsequently leased to the Radloffs. This litigation centers on that land and its crop of asparagus crowns.[1]

On May 15, 1986, the bank had harvested only a portion of the asparagus crowns growing on the leased tract of land. To continue the harvesting, the bank negotiated an agreement with the Radloffs to pay them $2,500 in exchange for keeping the land until the end of May.

On May 27, 1986, an aerial spraying service retained by the bank sprayed a deadly pesticide on the remaining unharvested crowns. Virtually all of the crowns were destroyed. The record contains no clear explanation for this act, although there is support for the Radloffs' position that the bank destroyed the crop to put the Radloffs at a competitive disadvantage in holding the property.

The Radloffs brought suit against the bank on June 3, 1988, asserting a reversionary interest in the crop. Their complaint alleged, among other claims, trespass to land, destruction of property, and interference with their business. The trial court granted partial summary judgment against the Radloffs, · finding that any cause of action arising from the pesticide spraying was barred by Minn.Stat. § 541.07(8), a two year statute of limitations. The Radloffs appeal.

## ISSUES

1. Was the pesticide spraying part of a continuous tort which tolled Minn.Stat. § 541.07(8)?

---

1. Asparagus crowns are roots grown from seed in densely planted beds. They are later transplanted to permanent production beds.

2. Does Minn.Stat. § 541.07(8) apply to a bank that contracts for pesticide spraying, and if so, does the statute violate the equal protection guarantees of the Minnesota and United States Constitutions?

## ANALYSIS

The statute at issue, Minn.Stat. § 541.07(8), limits to two years the time to bring actions

[a]gainst the person who applies the pesticide for injury or damage to property resulting from the application, but not the manufacture or sale, of a pesticide.

The Radloffs brought suit against the bank more than two years after the pesticide spraying. Their claims arising from that spraying are barred unless the statute of limitations was tolled or is inapplicable or unconstitutional.

## I

■ The Radloffs first contend that the bank's pesticide spraying was part of a continuing tort, and that the statute of limitations was tolled until the tort was complete. Their complaint describes a litany of incidents involving misrepresentation, coercion, unfair competition, and other matters which allegedly took place between 1985 and 1987. These incidents, according to their argument, comprised a "pattern of illegal activities" designed to interfere with their farming business. The Radloffs assert that any causes of action arising from this interference did not accrue until the occurrence of the last act in the bank's scheme, sometime in 1987.[2]

Minnesota courts have recognized the continuing wrong doctrine in certain situations. See, e.g., Sigurdson v. Isanti County, 448 N.W.2d 62, 67–68 (Minn.1989) (discrimination in employment); Northern States Power Company v. Franklin, 265 Minn. 391, 397, 122 N.W.2d 26, 30–31 (1963) (trespass). However, the acts alleged in the Radloffs' complaint were not continu-

---

2. The Radloffs do not argue that the pesticide injured their crops over a continuous period. See Industrial Steel Container Co. v. Fireman's Fund Insurance Co., 399 N.W.2d 156 (Minn.App. 1987), pet. for rev. denied (Minn. Mar. 18, 1987).

ous in nature. They were separate, unrelated acts, individually motivated. Each act "had a beginning and an end, each was separated from the next by some period of relative quiescence * * *." *See Davis v. Bostick,* 282 Or. 667, 580 P.2d 544, 548 (1978). Application of the continuous wrong doctrine to these acts is inappropriate. *See Fox v. Higgins,* 149 N.W.2d 369 (N.D.1967), *cert denied* 389 U.S. 873, 88 S.Ct. 160, 19 L.Ed.2d 153 (1967) (suit for interference with farming business, alleging twelve year period of wrongful acts ranging from arson to champerty to false arrest, ruled too dissimilar and separate to constitute a continuous tort.)

## II

■ Next, the Radloffs argue that Minn. Stat. § 541.07(8) does not apply to the bank and that, consequently, the causes of action at issue on appeal are controlled by the more general statutes of limitations governing trespass and destruction of property. *See* Minn.Stat. § 541.05(3) and (4). The validity of this contention turns on whether the bank is a "person who applies the pesticide" within the meaning of the statute.

Our analysis leads us to conclude that the legislature did not intend section 541.-07(8) to cover persons or entities, such as the bank, who contract for or hire pesticide services. First, we note that the language of the statute is unusually specific. Manufacturers and sellers are explicitly excluded from coverage, leaving a very limited class of defendants to whom the statute applies. Granted, the statute does not expressly assign contracting entities to inclusion or exclusion. However, the legislature's classification suggests an intent to exclude persons who are remotely related to pesticide'

application, while including those who are most directly connected.

Second, legislative intent may be ascertained by examining laws on similar subjects. Minn.Stat. § 645.16(5). There appears to be a relationship between section 541.07(8) and Chapter 18B of the Minnesota Statutes. Both pieces of legislation address the subject of pesticide application. Chapter 18B employs the terms "commercial applicator", "noncommercial applicator", and "private applicator" when referring to persons who are licensed or certified to use pesticides. Minn.Stat. § 18B.01, subds. 5, 15, 21 (1988). The terms plainly do not refer to persons who hire pesticide services. *See, e.g.,* Minnesota Rules § 1505.0980 (1989) (private applicator deemed certified after completion of state approved certification program).[3] Interpreting section 541.07(8) in this light, we believe that "the person who applies the pesticide" does not refer to persons who hire pesticide services.

Finally, the legislative history behind section 541.07(8) supports our statutory interpretation. Audio tapes of senate committee meetings indicate that this statute was enacted primarily to protect commercial pesticide applicators from stale claims. The legislature expressed no concern that persons who retain pesticide services should receive a dispensation from the usual six-year statute of limitations.[4]

■ We realize that our interpretation of section 541.07(8) may undermine the statute's constitutional validity. *See Pacific Indemnity v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 555 (Minn.1977) (striking down statute of limitations for arbitrarily conferring protection to one class of defendants while withholding protection from another). We feel constrained, however, to give ef-

---

**3.** By contrast, a bill that recently passed the Minnesota State Senate explicitly covered persons who contract for pesticide services. The bill provided in pertinent part:

A person who applies pesticide or *contracts to have pesticides applied* must provide written or oral notice to owners of honeybee colonies * * *.

S.F. No. 1674 (passed by the Senate, April 11, 1990) (emphasis added). Although this provi-

sion in the bill was ultimately deleted, the language demonstrates how the legislature might have worded § 541.07(8) had it intended to cover persons who contract for pesticide services.

**4.** The trial record includes an affidavit by Senator John Bernhagen which, while not authoritative, corroborates our conclusions drawn from the legislative audio record.

fect to the intent of the legislature without resorting to technical legal constructions. Courts are not at liberty to remedy defects in statutes by construing them to include coverage which was never intended. As stated by Justice Brandeis, "To supply omissions [in legislation] transcends the judicial function." *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926).[5]

Because we hold the statute inapplicable, we need not address the Radloffs' other arguments.

### DECISION

The trial court correctly ruled that the Radloffs may not invoke the continuous wrong doctrine to escape the effect of Minn.Stat. § 541.07(8). We hold, however, that the two year statute of limitations prescribed in section 541.07(8) is inapplicable, as it does not cover persons who contract for pesticide services.

Affirmed in part, reversed in part and remanded.

---

**5.** In any event, we have serious misgivings as to whether section 541.07(8) could withstand constitutional scrutiny even if we interpreted the statute to cover persons who contract for pesti-cide services. By excluding manufacturers and sellers from coverage, the statute appears to suffer from the same infirmities identified in *Thompson–Yaeger, Inc.*