**Anthony KAPLAN, Appellant,**

v.

**WASHINGTON COUNTY COMMUNITY SOCIAL SERVICES, Respondent,**

**Minnesota Department of Human Services, Respondent.**

**No. C0–92–1073.**

Court of Appeals of Minnesota.

Jan. 5, 1993.

David R. Moss, Legal Advocacy for Persons with Developmental Disabilities, Minneapolis, for appellant, Anthony Kaplan.

Richard M. Arney, Washington Co. Atty., Susan S. Tice, Asst. Co. Atty., Stillwater, for respondent, Washington County Community Social Services.

Hubert H. Humphrey, III, Atty. Gen., David P. Iverson, Special Asst. Atty. Gen., St. Paul, for respondent, Minnesota Dept. of Human Services.

Considered and decided by PARKER, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

PETERSON, Judge.

Anthony Kaplan appeals from an order of the district court affirming a decision by the Commissioner of Human Services. The Commissioner determined a person with Tourette Syndrome is not eligible for case management and home and community-based services for persons with mental retardation or a related condition under Minn. Stat. § 256B.092, subds. 1, 4 (1990). We affirm.

## FACTS

Appellant Anthony Kaplan is a nine-year-old child with Tourette Syndrome. Test results have shown Kaplan's intelligence is normal. However, he has serious functional limitations due to the Tourette Syndrome.

Carl R. Hansen is a child psychiatrist who has been treating Kaplan since 1990. He testified Kaplan has verbal and physical tics, including facial tics, simple body tics, complex body tics, compulsive swearing, and compulsive behaviors. Kaplan also exhibits physically destructive and violent behaviors.

Hansen testified Tourette Syndrome is a neurological or physical disorder, not a mental illness or psychological disorder. Although Kaplan does have emotional problems, Hansen characterized them as "psychological manifestations" of the Tourette Syndrome. Hansen explained there are psychological consequences with any physical illness.

Kaplan applied to respondent Washington County Community Social Services for case management and home and community-based services for persons with mental retardation or a related condition under Minn.Stat. § 256B.092, subds. 1, 4 (1990). The county denied his application. Kaplan appealed to respondent Department of Human Services. The Commissioner of Human Services determined Tourette Syndrome is not a related condition, and the district court affirmed. This appeal followed.

## ISSUE

Did the Commissioner err by concluding Kaplan was not eligible for services available to persons with mental retardation or a related condition under Minn.Stat. § 256B.092, subds. 1, 4 (1990)?

## ANALYSIS

■ This court's review of a decision of the Commissioner of Human Services is governed by Minn.Stat. § 14.69 (1990). *Mammenga v. Department of Human Servs.*, 442 N.W.2d 786, 789 (Minn.1989). Under Minn.Stat. § 14.69, this court determines whether the Commissioner's decision is in violation of a constitutional provision, is in excess of the Commissioner's statutory authority or jurisdiction, is made upon unlawful procedure, is affected by other error of law, is unsupported by substantial evidence, or is arbitrary or capricious. This court is not bound by the district court's decision, but may conduct an independent review of the Commissioner's decision. *Signal Delivery Serv. Inc. v. Brynwood Transfer Co. (Appeal of Signal Delivery Serv. Inc.)*, 288 N.W.2d 707, 710 (Minn.1980); *see also Fisher Nut Co. v. Lewis ex rel. Garcia*, 320 N.W.2d 731, 733–34 (Minn.1982) (when district court merely reviews agency decision, appellate court reviews agency determination rather than district court findings).

■ A reviewing court is not required to defer to an administrative agency with respect to pure questions of law. *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). Statutory construction is a question of law, therefore this court need not defer to the agency's determination. *Id.*

This case arises under Minnesota's medical assistance program. *See* Minn.Stat. §§ 256B.01–.73. (1990). Under the program, case management and home and community-based services are provided to persons with mental retardation or a related condition. Minn.Stat. § 256B.092, subds. 1, 4.

A person has a "related condition" if that person has a severe, chronic disability

that is (a) attributable to cerebral palsy, epilepsy, autism, Prader–Willi syndrome, or any other condition, *other than mental illness*, found to be closely related to mental retardation because the condition results in impairment of general intellectual functioning or adaptive behavior similar to that of persons with mental retardation or requires treatment or services similar to those required for persons with mental retardation; (b) is likely to continue indefinitely; and (c) results in substantial functional limitations in three or more of the following areas of major life activity: self-care, understanding and use of language, learning, mobility, self-direction, or capacity for independent living.

Minn.Stat. 252.27, subd. 1a (1990) (emphasis added).[1]

The issue on appeal is whether Tourette Syndrome is a condition "other than mental illness" included within the definition of "related condition." It is undisputed that Kaplan meets the other statutory criteria for a related condition. The parties only dispute whether Tourette Syndrome is a mental illness. Because chapter 256B does not define "mental illness," the definition of "related condition" is ambiguous and we must construe the statute to determine whether Tourette Syndrome is a related condition.

In construing a statute, the object "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1990). When a statute is ambiguous, the intention of the legislature may be ascertained by considering the object to be attained by the statute and other laws on the same or similar subjects. Minn.Stat. § 645.16(4), (5).

For purposes of eligibility for treatment services, the legislature has divided persons into two categories, those with mental illness and those with mental retardation. *See generally* Minn.Stat. §§ 245.461–.486 (1990) (Minnesota comprehensive adult mental health act), Minn.Stat. §§ 245.487–.4887 (1990) (Minnesota comprehensive children's mental health act), Minn.Stat. §§ 252.021–.52 (1990) (act establishing hospitals for persons with mental retardation), Minn.Stat. § 256B.092 (case management for mentally retarded persons). Given the different needs of persons with mental illness and those with mental retardation, it is reasonable to conclude the legislature intended to establish two separate programs to provide services to the two groups.

■ The purposes of the programs for persons with mental illness and those with mental retardation are closely related. Both are intended to provide needed services in the least restrictive setting that is appropriate. *See* Minn.Stat. § 245.461, subd. 2; Minn.Stat. § 245.487, subd. 3; Minn.Stat. § 256B.092, subd. 8(c). When possible, services will be provided in an individual's community and not in an institution. *See* Minn.Stat. § 245.461, subd. 2(2); Minn.Stat. § 245.487, subd. 3(5); Minn.Stat. § 256B.092, subd. 8(d).

■ Although not defined in the acts establishing programs for those with mental retardation, the term "mental illness" is defined in both the adult and children's mental health acts. Minn.Stat. § 245.462, subd. 20; Minn.Stat. § 245.4871, subd. 15 (uses term "emotional disturbance" instead of mental illness). Although the definition of mental illness contained in the mental health acts expressly applies only to those two acts, its application is *not* expressly limited to those two acts. Minn.Stat. § 245.462, subd. 1; Minn.Stat. § 245.4871, subd. 1. Because the legislature established separate programs to provide services to persons with mental illness and to persons with mental retardation, we conclude the legislature intended the definition of mental illness contained in the mental health acts to apply for purposes of determining eligibility for services under Minn. Stat. § 256B.092, subds. 1, 4.

■ The mental health acts define mental illness as follows:

1. Minn.Stat. § 252.27, subd. 1a is the applicable definition of a "related condition" for the medical assistance program. *See* Minn.Stat. § 256B.02, subd. 11.

"Mental illness" means an organic disorder of the brain or a clinically significant disorder of thought, mood, perception, orientation, memory, or behavior that is listed in the clinical manual of the International Classification of Diseases (ICD–9–CM), current edition, code range 290.0 to 302.99 or 306.0 to 316.0 or the corresponding code in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM–MD), current edition, Axes I, II, or III and that seriously limits a person's capacity to function in primary aspects of daily living such as personal relations, living arrangements, work, and recreation.

Minn.Stat. § 245.462, subd. 20(a); *see also* Minn.Stat. § 245.4871, subd. 15 (using "emotional disturbance" instead of "mental illness"). Both the International Classification of Diseases manual and the Diagnostic and Statistical Manual of Mental Disorders list Tourette Syndrome within the code ranges included in the statutory definition of mental illness. Public Health Serv.—Health Care Fin. Admin., U.S. Dep't of Health & Human Servs., *International Classification of Diseases, Ninth Revision, Clinical Modification*, 307.23 (2d ed. 1980) (hereinafter ICD–9–CM); American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 307.23 (3d rev. ed. 1987) (Hereinafter DSM–III–R). Because Tourette Syndrome falls within the statutory definition of mental illness, a person with Tourette Syndrome is not eligible for services provided pursuant to Minn. Stat. § 256B.092, subds. 1, 4. Only persons with mental retardation or a related condition "other than mental illness" are eligible for those services. Minn.Stat. § 252.27, subd. 1a; Minn.Stat. § 256B.092, subd. 1, 4.

Kaplan argues the phrase "related condition" should be construed as including Tourette Syndrome because autism is specifically included as a related condition. *See* Minn.Stat. § 252.27, subd. 1a. Autism, like Tourette Syndrome, falls within the statutory definition of mental illness. *See* Minn.Stat. § 245.462, subd. 20; ICD–9–CM, 299.0; DSM–III–R, 299.0. There was evidence before the Commissioner that autism and Tourette Syndrome result in similar functional limitations.

In addressing Kaplan's argument, we are guided by the following rule of statutory construction.

Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a law shall be construed to exclude all others.

Minn.Stat. § 645.19 (1990). In Minn.Stat. § 252.27, subd. 1a, the proviso "other than mental illness" limits only the phrase "any other condition." It does not refer to autism or any of the other expressly listed conditions. The specific listing of autism in Minn.Stat. § 252.27, subd. 1a demonstrates only a legislative intent to except autism from the mental illness exclusion contained in the definition of related condition. It shows no intent to except Tourette Syndrome from that exclusion.

Our construction of the statute is supported by the Commissioner of Human Services' interpretation. When construing an ambiguous statute, the administrative interpretation may be considered in determining legislative intent. Minn.Stat. § 645.16(8); *see also Arvig Tel. Co. v. Northwestern Bell Tel. Co.*, 270 N.W.2d 111, 114 (Minn.1978) (agency's interpretation may be entitled to some weight where statutory language is technical in nature and agency's interpretation is one of long-standing application). The Commissioner of Human Services is responsible for implementing the state's programs for persons with mental illness and for persons with mental retardation. Minn.Stat. § 245.461, subd. 2; Minn.Stat. § 245.487, subd. 3; Minn.Stat. § 252.025, subd. 4. The Commissioner determined the legislature has designated the comprehensive mental health act as the service delivery mechanism for persons with Tourette Syndrome, and, therefore, a person with Tourette Syndrome is not eligible for services provided under Minn.Stat. § 256B.092, subds. 1, 4.

■ Kaplan argues that in terms of the nature of the disorder, the resulting func-

tional limitations, and the appropriate treatment, Tourette Syndrome is more like mental retardation than mental illness. Although he may be correct, this court cannot ignore the language "other than mental illness" in the statutory definition of related condition. The legislature has authority to establish eligibility criteria for state programs. *See Dakota Hosp. v. County of Clay*, 280 Minn. 531, 534, 160 N.W.2d 246, 248 (1968) (programs implementing state policy to provide relief for indigent persons must be carried out according to conditions imposed by statutes). The legislature intended to exclude mental illness from the definition of related condition and, in a related statute, defined mental illness to include Tourette Syndrome. Consequently, to give effect to the legislature's intent, we must conclude Kaplan is not eligible for case management and home and community-based services under Minn.Stat. § 256B.092, subd. 1, 4. *See Radloff v. First Am. Nat'l Bank*, 455 N.W.2d 490, 494 (Minn.App.1990) ("Courts are not at liberty to remedy defects in statutes by construing them to include coverage which was never intended"), *pet. for rev. denied* (Minn. July 13, 1990).

## DECISION

The Commissioner properly determined Kaplan is not eligible for case management and home and community-based services pursuant to Minn.Stat. § 256B.092, subds. 1, 4.

Affirmed.