*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2037**

State of Minnesota by Lorie Afremov and Michael R. Afremov,
Appellants,

vs.

Anne L. Remes, et al.,
Respondents,
Martha W. Gabbert, et al.,
Respondents

**Filed August 10, 2015
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CV-13-20253

Jack Y. Perry, Kari S. Berman, Maren F. Grier, Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellants)

Ryan A. Olson, Daniel R. Haller, Felhaber Larson, Minneapolis, Minnesota (for respondents Anne Remes, et al.)

D. Charles MacDonald, Peter J. Berrie, David A. Snieg, Faegre Baker Daniels, L.L.C., Minneapolis, Minnesota (for respondents Martha Gabbert, et al.)

Considered and decided by Bjorkman, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from the district court's summary judgment dismissal of appellants' Minnesota Environmental Rights Act (MERA) claim arising from respondents' lake-access agreement, appellants argue that the district court erred by dismissing their MERA action because (1) respondents' lake-access agreement violates the Wayzata City Code's prohibition against the granting of private easements for lakeshore access and (2) the Wayzata City Code's prohibition against the granting of such easements constitutes an environmental quality standard, limitation, or rule under MERA. Respondents filed a notice of related appeal challenging the district court's conclusion that appellants' MERA claim was not barred by the statute of limitations. Because we conclude that appellants' MERA claim is barred by the statute of limitations and fails on the merits, we affirm the dismissal of appellants' MERA action.

## FACTS

Appellants Michael and Lorie Afremov own Lot 3, Block 1 of the Bell Fauth Addition, which is riparian property on Lake Minnetonka. Respondents John and Martha Gabbert own Lot 3, Block 1 of the Gabbert Bell Addition, which is also riparian property and is adjacent to the Afremovs' property. Respondents Peter and Anne Remes own Lot 1, Block 1 of the Gabbert Bell Addition, which is near the Gabberts' and the Afremovs' properties, but is non-riparian  All of the properties are located in Wayzata.

On August 19, 2005, the previous owners of the Remeses' property entered into a formal lake-access agreement with the Gabberts. Under the terms of the agreement, the

2

owner of the benefited lot (the Remeses' lot) would have the right to access Lake Minnetonka from the Gabberts' riparian property, including the right to install and use a covered boat dock upon the shores of the lake. The lake-access agreement was registered with the Hennepin County Registrar of Titles on August 22, 2005.

On the same day that the lake-access agreement was executed, a warranty deed was executed and delivered to the Remeses conveying title to the benefited lot. The warranty deed was recorded on October 3, 2005, and the certificate of title was issued that same day.

In January 2006, the Afremovs purchased their property. The northeastern-most boundary of the Afremovs' property is immediately adjacent to the Remeses' lake-access easement, which is ten feet wide and runs along the southwestern-most boundary of the Gabberts' property. In the spring of 2006, the Remeses installed a covered boat dock on the Gabberts' property, as permitted by the lake-access agreement. A year later, they installed a boardwalk within the lake-access easement, which traverses an area of alleged wetland located on the Gabberts' property and leads to the Remeses' dock.

In November 2013, the Afremovs commenced this MERA action against the Gabberts and Remeses (collectively "respondents") alleging inter alia that the lake-access agreement violates the City of Wayzata's ban on lake-access easements as set forth in Wayzata, Minn., City Code (WCC) § 805.33(E) (2014). The Afremovs claim that because this section is an environmental-quality standard, limitation, or rule, they are entitled to declaratory relief under MERA.

The Afremovs moved for summary judgment on their claims. In response, respondents sought summary judgment in their favor under Minn. R. Civ. P. 56.03. The district court denied the Afremovs' motion for summary judgment and granted in part respondents' motion for summary judgment. The district court rejected respondents' argument that appellants' MERA claim was barred by the statute of limitations. But the district court concluded that (1) the lake-access agreement does not violate WCC § 805.33(E) and (2) WCC § 805.33(E) is not an environmental-quality standard, limitation, or rule under MERA. The Afremovs subsequently filed this appeal, and respondents filed a notice of related appeal challenging the district court's conclusion that the Afremovs' MERA claim was not barred by the statute of limitations.

## D E C I S I O N

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. When considering a summary-judgment appeal, we review de novo whether there is a genuine issue of material fact and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). An award of summary judgment will be affirmed if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 828 (Minn. App. 1995), *review denied* (Minn. Feb. 13, 1996).

## I.

The Minnesota legislature enacted MERA to provide persons in the state with a "civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction." Minn. Stat. § 116B.01 (2014). The civil remedy authorized by the legislature is an action "for declaratory or equitable relief in the name of the state of Minnesota against any person, for the protection of air, water, land, or other natural resources located within the state, whether publicly or privately owned, from pollution, impairment, or destruction." Minn. Stat. § 116B.03, subd. 1 (2014).

To maintain an action under MERA, a plaintiff must make "a prima facia showing that the conduct of the defendant has, or is likely to cause the pollution, impairment, or destruction of the air, water, land or other natural resources located within the state." Minn. Stat. § 116B.04 (2014); *State by Archabal v. County of Hennepin*, 495 N.W.2d 416, 421 (Minn. 1993). "Pollution, impairment, or destruction" is defined as (1) "any conduct by any person which violates, or is likely to violate, any environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit of the state or any instrumentality, agency, or political subdivision thereof which was issued prior to the date the alleged violation occurred or (2) "any conduct which materially adversely affects or is likely to materially adversely affect the environment." Minn. Stat. § 116B.02, subd. 5 (2014).

Here, it is undisputed that the Afremovs invoked only the first prong of section 116B.02, subdivision 5. They argue that the environmental quality standard violated by

5

respondents is the Wayzata City Code's prohibition of the platting granting of private easements for private lakeshore access. *See* WCC § 805.33(E). In other words, the Afremovs argue that they are entitled to declaratory relief under MERA because (1) respondents' easement agreement violated WCC § 805.33(E)'s prohibition of the platting granting of private easements and (2) the violated ordinance, section 805.33(E), is an environmental quality standard, limitation, or rule.

## A. Did respondents violate WCC § 805.33(E)?

The rules of statutory construction apply to municipal ordinances and resolutions. *Eagan Econ. Dev. Auth. v. U-Haul Co. of Minn.*, 787 N.W.2d 523, 535 (Minn. 2010). Statutory interpretation is a question of law subject to de novo review. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

The object of statutory interpretation is to ascertain and effectuate the intention of the legislative body. Minn. Stat. § 645.16 (2014). When interpreting an ordinance, we first look to whether the language, on its face, is clear or ambiguous. *Motokazie! Inc. v. Rice Cnty.*, 824 N.W.2d 341, 344 (Minn. App. 2012). Words and phrases are construed according to their common and approved usage. Minn. Stat. § 645.08(1) (2014). If the language of the ordinance is clear and unambiguous, statutory construction is "neither necessary nor permitted" and we must apply the ordinance's plain meaning. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). In matters of statutory construction, a statute is only ambiguous when the language is subject to more than one reasonable interpretation. *Motokazie! Inc.*, 824 N.W.2d at 344.

The ordinance at issue, WCC § 805.33(E), provides: "The platting granting of private easements across private property or property lines for the purpose of providing lakeshore access is prohibited." The district court concluded that the term "platting granting" is unambiguous because "the plain language" of section 805.33(E) "restricts the granting of private lake access easements by plat." The district court determined that because the disputed lake-access agreement was created by private agreement, and not by plat, it does not fall within the prohibition of WCC § 805.33(E).

The Afremovs argue that the district court's determination is erroneous because the district court effectively re-wrote the ordinance by inserting the word "by" between "platting" and "granting" to reach its interpretation that the ordinance only prohibits the granting of lake-access easements by plat. The Afremovs argue that a proper interpretation of the term "platting granting," and the ordinance as a whole, is to prohibit the granting of all private lakeshore easements. The Afremovs contend that because WCC § 805.33(E) prohibits the granting of all private lakeshore agreements, respondents' lake-access agreement is in violation of the Wayzata City Code.

The Afremovs' argument is without merit. Although somewhat awkwardly phrased, the clear and unambiguous language of the ordinance states that the "platting granting of private easements across private property or property lines for the purpose of providing lakeshore access is prohibited." WCC § 805.33(E). As the district court determined, the plain language of this provision prohibits the granting of lakeshore easements by plat. And despite the Afremovs' claim to the contrary, this conclusion does not require the word "by" to be read into the ordinance between the words "platting" and

7

"granting." Rather, the insertion of the word "by" into the ordinance simply rephrases the prohibition of the ordinance: the "platting granting" of private easements over private property for the purpose of providing lakeshore access.

Moreover, in order to reach their desired conclusion, the Afremovs must insert the word "and" into the language of the prohibition ("platting *and* granting"), a practice that is clearly forbidden. *See Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010) (stating that courts may not add words to a statute "that are purposely omitted or inadvertently overlooked" by the legislature). This is exemplified in their brief where the Afremovs quote WCC § 805.33(E) to support their argument that "[a]nd the more, and indeed only reasonable interpretation of City Code § 805.33(E)'s 'prohibit[ion]' on 'private easements . . . for . . . private lakeshore access' is that it 'prohibt[s]' 'the platting [*and*] granting' of such 'easements.'" (Emphasis added.) It is only by inserting "and" between "platting" and "granting" that the Afremovs' desired interpretation of the ordinance can be reached: to prohibit all easements over private property for the purpose of providing lakeshore access. Without the word "and," the ordinance simply prohibits the "platting granting" of private easements, not the platting and granting of all easements.

Further, we must construe the ordinance so "as to harmonize and give effect to all its parts, and where possible, no word . . . will be held superfluous, void, or insignificant." *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009) (quotations omitted). If we were to adopt appellants' argument, the word "platting" in WCC § 805.33(E) would be rendered irrelevant.

8

Finally, the district court's interpretation of WCC § 805.33(E) is also consistent with the Minnesota Statutes. Minn. Stat. § 505.021, subd. 7 (2014) provides that "[e]asements created on [a] *plat* shall be limited to public utility and/or drainage easements." (Emphasis added.) And WCC § 805.21 states that plats "shall be prepared in accordance with provisions of Minnesota State Statutes." By prohibiting the granting by plat, or "platting granting" of lake-access easements across private property for the purposes of providing lakeshore access, section 805.33(E) simply ensures that the City of Wayzata's regulations with respect to plat development are consistent with the Minnesota Statutes. *See* Minn. Stat. § 462.358, subd. 3a (2014) (stating that a municipality's platting regulations "shall not conflict with the provisions of chapter 505 but may address subjects similar and additional to those in that chapter").

In sum, the plain language of WCC § 805.33(E) prohibits the "platting granting" of private easements across private property for the purpose of providing lakeshore access. It does not prohibit the granting of private easements by agreement. Because the lake-access easement at issue here was granted by agreement and not by plat, it does not violate WCC § 805.33(E). Therefore, the Afremovs' MERA claim fails, and the district court did not err by granting summary judgment in favor of respondents.

## B. Is WCC § 805.33(E) an environmental quality standard?

Even if we were to conclude that respondents' lake-access easement violates WCC § 805.33(E), the Afremovs are entitled to relief under MERA only if they can demonstrate that the violated ordinance is an environmental-quality standard, limitation, or rule. *See* Minn. Stat. § 116B.02, subd. 5; *see also Archabal*, 495 N.W.2d at 421.

9

MERA, however, does not define what constitutes an environmental-quality standard, limitation, or rule. And because there is a lack of authority pertaining to the first prong under MERA, the district court looked to caselaw analyzing the second prong under MERA for guidance.

To establish a claim under MERA's second prong, the challenged conduct must be likely to have a "materially" adverse effect on the environment. Minn. Stat. § 116B.02, subd. 5. But the supreme court recognized that almost every human activity adversely impacts a natural resource, and MERA cannot be construed "'as prohibiting virtually all human enterprise.'" *State by Schaller v. Cnty. of Blue Earth*, 563 N.W.2d 260, 265 (Minn. 1997) (quoting *State ex rel. Wacouta Twp. v. Brunkow Hardwood Corp.*, 510 N.W.2d 27, 30 (Minn. App. 1993)). Consequently, the supreme court adopted five factors to be considered when determining whether conduct materially adversely affects the environment:

> (1) The quality and severity of any adverse effects of the proposed action on the natural resources affected;
>
> (2) Whether the natural resources affected are rare, unique, endangered, or have historical significance;
>
> (3) Whether the proposed action will have long-term adverse effects on natural resources, including whether the affected resources are easily replaceable (for example, by replanting trees or restocking fish);
>
> (4) Whether the proposed action will have significant consequential effects on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed);

10

> (5) Whether the affected natural resources are significantly increasing or decreasing in number, considering the direct and consequential impact on the proposed action.

*Id.* at 267.

The district court found the caselaw analyzing the second prong under MERA to be "instructive." The district court then stated that "[j]ust as the appellate courts have construed the second prong of MERA to be confined to cases with serious environmental implications, they would be likely to construe the first prong of MERA to be confined to statutes, rules, or codes whose embodiment of environmental quality standards is their primary function, and not an incidental or tangential effect." Applying this reasoning to the issue before it, the district court concluded that WCC § 805.33(E) does not constitute an environmental-quality standard, rule, or code under MERA because section 805.33(E) "does not prohibit any specific activity to protect Lake Minnetonka from pollution, impairment, or destruction. It does not limit the number of boats stored or used on the lake, nor does it limit the number of docks on the lake. . . . [It] simply prohibits the 'platting granting' of lake access easements."

The Afremovs argue that the district court erroneously applied the "materiality" standard used in analyzing the second prong under section 116B.02, subdivision 5, because, under the plain language of the statute, "[n]either an 'environmental quality standard, limitation [or] rule,' including a violation thereof, needs to be 'material' to be actionable under the first part of MERA's two-part definition of 'pollution, impairment, or destruction.'" Instead, the Afremovs argue for a broader interpretation of MERA, asserting that an "environmental quality standard, limitation, or rule" under MERA's first

11

prong is a standard, limitation or rule that is "designed for, or has as one of its underlying purposes, the protection and preservation of Minnesota's natural resources."[1]

To support their assertion, the Afremovs refer to Minn. Stat. § 116B.01, which states that MERA was enacted to protect Minnesota's natural resources. The Afremovs claim that because section 116B.01 sets forth an "exceedingly broad environmental protection purpose" the first prong of section 116B.02, subdivision 5 should be construed to reflect that broad purpose. And the Afremovs attempt to bolster their position by referring to several statutes enacted in other states that allow its citizens to bring an action for violations of environmental-protection standards.

The Afremovs' arguments are unpersuasive. A review of the district court's order reflects that it did not specifically apply the materiality standard to the issue before it; the court never applied the five factors set forth in *Schaller*, nor did it read into the first prong a requirement that in order for MERA to apply, the environmental quality standard, limitation, or rule be a "material" environmental-quality standard, limitation, or rule. But the district court did find a standard akin to the "materiality" standard to be applicable, and concluded that, like the construction of the second prong under MERA, the first prong should be construed to focus on statutes, rules, or codes that are aimed at

---

[1] The Afremovs also assert that a standard, limitation, or rule is an "environmental quality standard, limitation, or rule" if it was adopted or issued by a governmental instrumentality or agency, such as the Minnesota Pollution Control Agency or the Minnesota Department of Natural Resources, "which is charged by the State of Minnesota with the protection and preservation of the environment and Minnesota's natural resources." But the Afremovs make no claim that the code at issue here, WCC § 805.33(E), was adopted by a governmental agency charged with the protection and preservation of Minnesota's natural resources.

protecting environmental-quality standards instead of statutes, rules or codes that may have some indirect effect on environmental standards.

Because there is no Minnesota caselaw establishing the requirements of an "environmental quality standard, limitation, or rule," under the first prong of section 116B.02, subdivision 5, we agree that it is logical to refer to caselaw interpreting the second prong of that section in order to maintain consistency in the interpretation of MERA. Caselaw analyzing the second prong recognized that MERA "requires something more than merely an adverse environmental impact to trigger its protection." *Schaller*, 563 N.W.2d at 265. And this narrower interpretation of MERA is appropriate because, as the supreme court has recognized in interpreting the second prong, "almost every human activity has some kind of adverse impact on a natural resource." *Id.* at 266. Indeed, under the Afremovs' "broader" interpretation of an environmental-quality standard, limitation, or rule, a claim could be brought under MERA for practically any violation of a standard, limitation, or rule because almost any standard, limitation, or rule could be construed as having some tangential environmental implications. For example, as the district court found, under the Afremovs' interpretation, "a simple zoning violation, such as a single-family residential subdivision with three-foot-wide sidewalks (instead of the requisite four-feet width), in apparent violation of Wayzata City Code § 805.30, could give rise to a MERA suit." We conclude that such a result is absurd and cannot be the rule. *See* Minn. Stat. § 645.17(1) (2014) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable.").

13

Moreover, the statutes cited by the Afremovs from other states actually support a position that in order for a claim to be actionable under MERA, the primary purpose of the standard, limitation, or rule that is alleged to be violated must be environmental in nature. For example, Mass. Gen. Laws ch. 214, § 7A (2014) allows citizens to bring an action for declaratory relief if "damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation *the major purpose of which* is to prevent or minimize damage to the environment." (Emphasis added.) Similarly, N.J. Stat. § 2A:35-4 (2013) provides that any person may bring an action for injunctive or equitable relief "against any other person alleged to be in violation of any statute, regulation, or ordinance *which is designed* to prevent or minimize pollution, impairment, or destruction of the environment." (Emphasis added.) These statutes do not merely have some ancillary or tangential effect on environmental protections. Rather, they require that, in order to bring an action for environmental violations, the statute or rule that is alleged to be violated must be "designed to" or have a "primary purpose of" protecting the environment. Therefore, consistent with the statutes from other states that are similar to MERA, as well as the caselaw analyzing the second prong of section 116B.02, subdivision 5, we conclude that under the first prong of section 116B.02, subdivision 5, an "environmental quality standard, limitation, or rule" is a standard, limitation, or rule with a primary purpose of protecting Minnesota's natural resources.

The Afremovs argue further that WCC § 805.33(E)'s prohibition on private easements for private lakeshore access was "adopted for one purpose," "the 'protect[ion]' and 'enhance[ment]' of Lake Minnetonka" "against lake overcrowding and pollution."

14

(alterations in original). Thus, the Afremovs argue that regardless of whether an "environmental quality standard, limitation, or rule" under MERA is construed to mean a standard, limitation, or rule that has a primary purpose of protecting and preserving the environment "the district court's holding must be reversed."

We disagree. There is nothing in the language of section 805.33(E) indicating that its purpose is to protect and enhance Lake Minnetonka. WCC § 805.33(E) does not prohibit any specific activity to protect Lake Minnetonka from pollution, impairment, or destruction. It simply prohibits the "platting granting of private easements across private property . . . for the purpose of providing private lakeshore access." WCC § 805.33(E). In fact, because section 805.33(E) limits only the "platting granting" of private easements, and not the granting of easements by agreement, the section does not limit the number of boats stored or used on the lake, nor does it limit the number of docks on the lake. And any limitation that might result from the prohibition against the platting granting of private easements would be a tangential effect of section 805.33(E).

Finally, the Afremovs point to WCC § 805.02(B)(5) (2014), which states that one of the goals of chapter 805 of the Wayzata City Code is to "[r]elate development/redevelopment to the natural characteristics of the land to enhance the development through the preservation of attractive natural amenities." The Afremovs argue that this goal is consistent with a conclusion that WCC § 805.33(E) is an environmental standard, limitation, or rule.

A review of the Wayzata City Code reveals that the purpose of Chapter 805, entitled "Subdivision Regulations" is:

15

(1)    To encourage well planned, efficient and attractive subdivision by establishing adequate and impartial standards for design construction.

(2)    To provide for the health and safety of residents, by requiring properly designed streets and adequate sewer and water service.

(3)    To place the cost of improvements against those benefiting from their construction.

(4)    To secure the rights of the public with respect to public lands and waters.

(5)    To set minimum requirements to protect the public health, safety, comfort, convenience, and general welfare.

WCC § 805.02(A). (2014).  None of these stated purposes is environmental in nature. Moreover, section 805.33(E) is located in the subdivision of Chapter 805 entitled "Design Standards."  The rules and regulations encompassed in the "Design Standards" subdivision focus on the uniformity and efficiency of subdivisions.  Although one of the stated goals of chapter 805 is environmental in nature, this does not make the primary focus of every section in chapter 805 environmental in nature such that it constitutes an environmental standard, limitation, or rule.  As discussed above, such a conclusion would lead to an absurd result because a violation of every section under chapter 805 of the Wayzata City Code would then be a basis for bringing a MERA claim.  Accordingly, WCC § 805.33(E) is not an environmental-quality standard, limitation, or rule for purposes of Minn. Stat. § 116B.02, subd. 5, and the district court did not err by dismissing the Afremovs' MERA action.

16

Respondents filed a related appeal challenging the district court's determination that the Afremovs' MERA claim is not barred under the applicable statute of limitations, which the parties agree is six years under Minn. Stat. § 541.05, subd. 1(2) (2014). The statute of limitations begins to run on a claim when "the cause of action accrues." Minn. Stat. § 541.01 (2014). "A cause of action accrues when the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011). We review "de novo the construction and application of a statute of limitations, including the law governing the accrual of a cause of action." *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013) (quotation omitted).

Courts occasionally recognize that a continuing wrong may suspend a limitation period. *Radloff v. First Am. Nat'l Bank*, 455 N.W.2d 490, 492 (Minn. App. 1990), *review denied* (Minn. July 13, 1990); *see, e.g., Sigurdson v. Isanti Cty.*, 448 N.W.2d 62, 67-68 (Minn. 1989) (recognizing the doctrine in a discrimination claim). To suspend the limitation period, the alleged tortious conduct must be "continuous in nature." *Radloff*, 455 N.W.2d at 492-93. But where such acts are "separate, unrelated acts, individually motivated," they will not be considered "continuous in nature." *Id.* Acts are considered separate when each "had a beginning and an end, each was separated from the next by some period of relative quiescence . . . ." *Id.* at 493 (quotation omitted).

The district court determined that the continuing-wrong doctrine was applicable because "[e]ach use of the easement does not constitute a separate, unrelated act; rather it

17

is the continued use that would result in an ongoing series of injuries, provided the requirements of MERA are satisfied." Respondents argue that this decision is erroneous because the focus must be on "what the relevant statute (or in this case, ordinance) actually prohibits." Respondents contend that because the allegedly prohibited conduct is the granting of an easement under WCC § 805.33(E), and because that conduct occurred at the time the easement was granted, the district court erred by concluding that the continuing-wrong doctrine was applicable.

We agree with respondents. In *Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc.*, 624 N.W.2d 796, 803 (Minn. App. 2001), this court concluded that the continuing-wrong doctrine was applicable because the gun club's *conduct* was "not limited to a single transgression, but must be viewed as an ongoing series of injuries to respondents' properties." Similarly, in *Radloff*, this court stated that to suspend the limitations period, the alleged tortious *conduct* must be "continuous in nature." 455 N.W.2d at 492-93.

Here, the Afremovs do not claim that the ordinance prohibits the use and maintenance of private easements. Indeed, WCC § 805.33(E) does not prohibit such conduct. Instead, the alleged wrongful conduct is that respondents violated WCC § 805.33(E) by granting the private easement. Unlike *Citizens for a Safe Grant*, in which a new offense arose each time the shooting range was used without the provision of safety features or sound abatement, the alleged wrongful conduct here occurred only once, in August 2005, when the lake-access easement was granted and registered. Therefore, the continuing-wrong doctrine is not applicable.

18

Finally, the Afremovs argue that because the lake-access agreement violates WCC § 805.33(E), the agreement is void as a matter of law and, therefore, respondents' statute-of-limitations defense is moot. But as respondents point out, the Afremovs failed to raise this issue below, and the district court never considered or decided the issue. It is well settled that a "reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). Thus, because the issue was not raised below and not considered by the district court, the issue has been waived.

Because the continuing-wrong doctrine does not apply, the Afremovs' action must have been brought within six years from the time the cause of action accrued to survive Minn. Stat. 541.05. The record reflects that the easement agreement was granted and registered in August 2005. The record also reflects that the Afremovs did not file their complaint until November 2013, more than six years after the "granting" of the easement agreement. Therefore, the district court erred by concluding that the Afremovs' claims were not barred by the statute of limitations.

**Affirmed.**