**Winford J. McINTOSH, Respondent,**

v.

**The Honorable Michael J. DAVIS, Judge of the Fourth Judicial District, and the Honorable Peter Lindberg, Chief Judge of the Fourth Judicial District, Petitioners.**

**James L. HADLEY, Respondent,**

v.

**The Honorable Charles PORTER, Judge of the Fourth Judicial District, the Honorable Michael J. Davis, Judge of the Fourth Judicial District, and the Honorable Peter Lindberg, Chief Judge of the Fourth Judicial District, Petitioners.**

**Nos. C7–88–2586, C3–88–2620.**

Supreme Court of Minnesota.

June 2, 1989.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, for petitioners.

William R. Kennedy, Chief Public Defender, Philip D. Bush, Asst. Public Defender, Minneapolis, for respondent.

Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Minneapolis, amicus curiae.

POPOVICH, Chief Justice.

This matter involves a review of orders for writs of mandamus issued by the court

of appeals requiring the petitioner judges to schedule defendants' trials within the 60–day time limit provided in Minn.R.Crim. P. 11.10. Trials for both respondents were scheduled beyond the 60–day time limit under a comprehensive criminal calendering plan, commonly called the "blitz." It was implemented during January and February 1989 by the Hennepin County District Court in an effort to reduce the backlog of criminal cases. In the order granting review, this court directed the parties to address, in addition to any other issues, the following:

> Whether under Minn.R.Crim.P. 11.10 a trial court on its own motion may delay a trial beyond 60 days from the date of the demand for a speedy trial and, if so, whether the basis for the delay offered by the trial court in the instant case was sufficient to constitute "good cause" within the meaning of the rule.

We hold the use of the extraordinary equitable remedy of mandamus was not appropriate in this case. The limited record did not support a finding of good cause for the delay; however, defendants had other legal remedies available to them. The orders and writs are quashed.

## I.

These two matters involve felony defendants who pled not guilty to the charges against them and requested speedy trials under Minn.R.Crim.P. 11.10 in November 1988 after the Fourth Judicial District had begun implementation of a scheduling plan designed to reduce the backlog of criminal cases and the amount of time felony defendants are incarcerated before trial. A task force consisting of representatives from the county and city attorneys' offices, the public defender's office, the sheriff, the probation department, the court administrator's office, the private defense bar and the bench had studied the backlog problem for a year and a half and conceived of an overall backlog reduction plan. The January–February "blitz" plan was adopted by the judges of the district. It called for suspension of most civil trials during the two months of January and February 1989 in order to make the maximum possible number of judges available to handle criminal matters. Scheduling of the cases during the two months was determined by considering schedules of prosecutors and defense counsel, likelihood of settlement and other factors. In order to maximize the effectiveness of the plan, rescheduling of assigned trial dates was to be kept to a minimum to avoid a "ripple" effect which would require changes in schedules for other attorneys and judges. Requests for continuance were also discouraged.

McIntosh, incarcerated in Hennepin County on October 6, 1988, was charged with two counts of criminal sexual conduct. On November 7, 1988, he appeared in court, entered a plea of not guilty and orally requested a speedy trial. When the clerk indicated January 23, 1989 was available, McIntosh and his attorney both indicated the date was "not speedy" but the date was not changed. In a later hearing on defense counsel's request to reschedule, both the prosecutor and defense counsel indicated they were available earlier in January. The court explained that the date originally scheduled was part of the January–February plan and denied the request to reschedule on the basis it was not feasible, notwithstanding that it would be approximately three weeks beyond the 60–day demand.

Hadley, incarcerated on October 14, 1988, was charged with second degree assault, kidnapping and theft of a motor vehicle. On November 8, 1988, he appeared in court, pled not guilty and requested a speedy trial. Trial was scheduled for February 27, 1989, 53 days past the 60–day time period. On December 2, 1988, Hadley repeated his demand for a speedy trial. Defense counsel indicated that she could switch another trial with Hadley's but the court denied the request to reschedule.

Subsequently, on December 19, 1988, a hearing was held on a motion for modification of the trial schedule. After hearing the suggestions made by respondent's counsel, the court indicated there were "several schedules involved in this" other than just those of the attorneys. The court

explained that the judge scheduled to hear respondent's case was to begin a juvenile murder trial on the date counsel requested. After more discussion about the schedules of the various people involved, the court denied the request for modification of the calendar because it was not certain a judge could be available for respondent's trial on the requested date. The court did indicate, however, if it was possible to make the change after conferring with other judges he would do so, but the date was not subsequently changed.

Both McIntosh and Hadley filed petitions in the Minnesota Court of Appeals for writs of mandamus requiring the Hennepin County District Court to set trial dates within the 60–day period provided for in Minn.R.Crim.P. 11.10.[1] The court of appeals issued orders granting the petitions. The judges then petitioned for extraordinary relief and the orders were stayed by this court pending review. Before oral argument, both defendants resolved their cases by entering plea agreements.

## II.

■ A preliminary issue which must be addressed is the question of mootness. Generally courts may only decide cases which present actual controversies. *State ex rel. Lezer v. Tahash*, 268 Minn. 571, 571, 128 N.W.2d 708, 708 (1964). Where an event occurs during the pendency of an appeal which renders the decision unnecessary, the appeal will be dismissed. *Bixler v. J.C. Penney Co., Inc.*, 376 N.W.2d 209, 214 (Minn.1985). If by the nature of its facts, however, a case presents a question which is "capable of repetition but likely to evade review," an appellate court may decide the question. *Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29, 32 (Minn. 1980).

Here, both defendants sought only to have their trials rescheduled and both settled their cases without trial during the pendency of this appeal. Although this court cannot now grant them the relief they requested, we consider the issue presented because it is likely to recur and requires resolution by this court.

## III.

The authority of Minnesota courts to issue writs of mandamus is statutory. Minn. Stat. Chapter 586 (1988). Minn.Stat. § 586.01 provides:

The writ of mandamus may be issued to any inferior tribunal, * * * to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. It may require an inferior tribunal to exercise its judgment or proceed to the discharge of any of its functions, but it cannot control judicial discretion.

Because mandamus is an extraordinary legal remedy granted on equitable principles, *State ex rel. Barnes v. Tauer*, 178 Minn. 484, 487, 227 N.W. 499, 500 (1929), a writ of mandamus may be granted only where there is no other adequate remedy at law. *Victor Co. v. State*, 290 Minn. 40, 45, 186 N.W.2d 168, 172 (1971).

■ To obtain a writ of mandamus, a petitioner must establish that the court had a clear and present official duty to perform a certain act. *State ex rel. Brenner v. Hodapp*, 234 Minn. 365, 370, 48 N.W.2d 519, 522 (1951). Where the act the officials are being ordered to perform is a discretionary one, the party seeking the writ must establish that failure to perform it "was so arbitrary and capricious as to constitute a clear abuse of discretion." *Baker v. Connolly Cartage Corp.*, 239 Minn. 72, 74, 57 N.W.2d 657, 658 (1953).

■ An order directing the issuance of a peremptory writ of mandamus is appealable. *State v. Teall*, 72 Minn. 37, 39, 74 N.W. 1024, 1024 (1898). On review the question of law to be considered *de novo* is whether each element of the mandamus test was satisfied. *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir.1986), *cert. de-*

---

1. Strangely, during the trial court proceedings the prosecution offered no support for good cause delay. It made no appearance before the court of appeals, but in the proceedings before us appeared as *amicus,* claiming good cause and the right of a court on its own initiative to delay a trial after a proper speedy trial had been requested.

*nied* 483 U.S. 1021, 107 S.Ct. 3264, 97 L.Ed. 2d 763 (1987). Thus, we must determine: (a) whether the judges had either a clear and present duty to reschedule the trials or abused their discretion by not rescheduling, and (b) whether alternative remedies were available to defendants making the issuance of a writ unnecessary.

## IV.

Minn.R.Crim.P. 11.10 provides in relevant part:

A defendant shall be tried as soon as possible after entry of a not guilty plea. On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant why he should not be brought to trial within that period.

While the rule contains mandatory language: "the trial shall be commenced within sixty (60) days from the date of the demand,".in the same sentence it contains a conditional clause which provides the mandate does not apply where "good cause is shown by the prosecution or defendant." Trial courts exercise discretion over general calendaring and scheduling of trials, subject to rule, statutory or constitutional provisions. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The rule does not provide a specific consequence for failure to bring the defendant to trial within the time limits set by the rule. Rather, the drafters stated that the time limits were not intended to be rigid and violations of the rule and consequences should be decided on a case by case basis. G. Scott, *An Overview of the Minnesota Rules of Criminal Procedure,* Minnesota Rules of Court 101, 104 (West 1988).

Because the rule permits good cause delay, it cannot be said that a "clear official duty" to absolutely conduct all trials within

60 days is created by the rule. Absent such a duty, a writ of mandamus is available only where the act or failure to act constitutes a clear abuse of discretion. *Baker,* 239 Minn. at 74, 57 N.W.2d at 658.

The judges could be found to have abused their discretion either by authorizing the delay without authority or without good cause to do so. Defendants contend Rule 11.10 does not allow the court to delay trial where neither party requests the delay and that even if the court could authorize delays for good cause without a request by one of the parties, the reasons given by the court do not constitute good cause.

We recently addressed the issue of a trial delay beyond the 60–day limit where neither party shows good cause in *State v. Friberg,* 435 N.W.2d 509 (Minn.1989). The trial court's denial of a motion to dismiss for violation of Rule 6.06 (the speedy trial rule for misdemeanors) was affirmed by a closely divided court. Defendants urge us to overrule *Friberg.*[2] That case is distinguished on its facts and the conduct of counsel.

The general notion that trial courts are responsible for case management and must control calendars, including the authority to grant continuances, is widely accepted. The American Bar Association recommends that trial courts have "absolute" control over trial calendars because delegation of any scheduling responsibility to the prosecutor can lead to the appearance of abuse. ABA Standards on Criminal Justice 12–1.2 comment at 12–8–9 (1980). Federal courts allow delays by the court on its own motion where the judge finds that the ends of justice will be served. 18 U.S.C. § 3161(h)(8)(A) (1982); *see also United States v. Edwards,* 627 F.2d 460, 461 (D.C. Cir.1980).

■ We do not believe it is an abuse of discretion for a trial court to delay trial on its own initiative where there is good cause

2. In *Friberg* we noted the administration of court calendars has changed since the Minnesota Rules of Criminal Procedure were adopted. We suggested that the Advisory Committee on the Rules of Criminal Procedure review Rule 6.06. Since this matter involves Rule 11.10, we reiterate our request to the committee to consider both speedy trial rules to reflect the changes in administration of court calendars and to submit any proposed rule change for public hearing and review by this court.

or exigent circumstances substantiated by the record. For example, in the event of the death of the trial judge or if the courthouse burned and there was no immediate space available, a trial court could delay commencement of a trial. Mere court congestion is insufficient.

Whether there was good cause for the delays in these two matters presents more difficulty. To determine whether the trial court used the proper standards for evaluating good cause we must review the record *de novo*. *United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984). Reviewing the record here is difficult because it is a limited record at best.

The record consists of transcripts of several brief appearances before the judges for purposes of entering not guilty pleas and setting trial dates and several affidavits submitted in support of the judges' petition for review containing conclusionary statements. The only reason given for not scheduling the trials within 60 days was there were no dates available according to the "blitz" plan that was being implemented, and rescheduling other cases to accommodate the speedy trial demands of these two defendants would disrupt the plan and reduce its effect. The record does not, however, contain any specific information about how rescheduling would upset the "blitz" plan or what provisions, if any, the court had made in its "blitz" plan for accommodating speedy trial demands. Further, none of the judges indicated in their rulings what factors, if any, they considered other than their own reason for the delay, *i.e.*, implementation of the backlog reduction plan.

In contrast to *Friberg*, here the defendants were more than minimally prejudiced by their continued incarceration and the record is virtually devoid of specific information about why the demands for speedy trial could not be met. We do not wish to discourage the Fourth Judicial District, or any other district, from developing and implementing plans to efficiently handle criminal cases. Such plans, however, should contain contingencies for honoring requests for speedy trial. We do not decide

that delays caused by the implementation of similar comprehensive backlog reduction plans can never be allowed. We simply hold that the record here does not support a finding of good cause. Accordingly, the judges' refusal to reschedule was error. We thus decline defendants' request to overrule *Friberg*.

Nothing written here should be construed in any way as criticism of the purpose and goals of the "blitz" plan. On the contrary, the ingenuity and dedication of the petitioner judges and all the Hennepin County District Court judges in seeking to eliminate court congestion and backlog is to be commended. This first experience and the results achieved can be evaluated and used to plan for future improved case management. As is often quoted: "Nothing ventured, nothing gained." We encourage all judges to continue to explore creative ways to reduce court delay. All parties gained by this innovative experiment, and methodology can always be improved.

## V.

Another part of the test for issuance of writs of mandamus is whether there were alternative remedies available at law. *Victor*, 290 Minn. at 45, 186 N.W. 2d at 172. The court of appeals itself, in its order granting the petitions for writs of mandamus, indicated other remedies available to defendants. They could have waited until the 60–day limit passed and moved to have the charges dismissed for violation of their right to speedy trial. They could also have raised the issue in a direct appeal from conviction. Because these alternative remedies, and perhaps others, were available to defendants at the time the writs were issued, the issuance of the writs of mandamus by the court of appeals was not proper.

The orders for writs are quashed.

WAHL, J., took no part in the consideration or decision of this case.