**STATE of Minnesota, Appellant,**

v.

**Donald LeRoy GENUNG, Respondent.**

**No. C2–91–1954.**

Court of Appeals of Minnesota.

Feb. 18, 1992.

Review Denied April 13, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Mark S. Rubin, Asst. Co. Atty., Duluth, for appellant.

John M. Stuart, State Public Defender, Susan L.–P. Hauge, Asst. Public Defender, Minneapolis, Harry L. Newby, Jr., Cloquet, for respondent.

Considered and decided by FORSBERG, P.J., and KALITOWSKI and FLEMING,* JJ.

## OPINION

FORSBERG, Judge.

The State of Minnesota challenges the trial court's decision to quash as untimely the presentment of a four-count indictment against respondent Donald LeRoy Genung

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

pursuant to Minn. Const. art. VI, § 2.

for aiding and abetting first degree murder, pursuant to Minn.R.Crim.P. 8.01. We reverse.

## FACTS

On October 5, 1990, Ronald St. Germaine and John Ben Loons were found dead in Duluth, Minnesota. Michael Lefthand and Charles Mark Bluebird were arrested in connection with the murders. On October 10, 1990, the state filed a complaint charging respondent and Bluebird with aiding and abetting Lefthand in the commission of two second degree murders, in violation of Minn.Stat. § 609.19 (1990). Because second degree murder is not punishable by life imprisonment, the state did not file a notice of intent to present the matter to a grand jury.

Respondent demanded an omnibus hearing to analyze probable cause and Rasmussen issues, which the trial court scheduled for October 22, 1990. At the hearing, both parties requested continuances, and respondent waived the 14–day rule. The trial court granted a continuance to November 1, 1990. The state told the court it was ready to proceed on the issue of probable cause and requested a continuance of the Rasmussen issues, which was granted to November 9, 1990.

On November 7, 1990, the state wrote a letter to respondent stating its office had requested a grand jury hearing to determine whether indictments should be brought against persons involved in the deaths of Loons and St. Germaine. The state told respondent the date of the hearing and invited respondent to appear and testify.

On November 14, 1990, the state wrote a letter to respondent stating it intended to present to a grand jury two counts of aiding and abetting first degree murder against both respondent and Bluebird. The state stated the initial proceeding, to which it had invited respondent and Bluebird to testify, would address only Lefthand's involvement in the murders.

In its plea bargain, the state indicated it was willing to accept guilty pleas to two counts of aiding and abetting second degree murder in exchange for foregoing a request of the grand jury to consider charges of aiding and abetting first degree murder, recommendations of concurrent sentences, and no departure from the sentencing guidelines. The state further indicated respondent could argue for durational departure, and that the offer would remain open until November 30, 1990.

On November 15, 1990, the state filed a notice of intent to present charges against Lefthand, Bluebird, and respondent to a grand jury, pursuant to Minn.R.Crim.P. 8.01.

On December 18, 1990, the trial court denied respondent's motion to dismiss the two counts of aiding and abetting second degree murder against him for lack of probable cause.

Lefthand was indicted and tried in June 1991. On June 27, 1991, he was convicted of four counts of first degree murder. On July 3, 1991, the state filed a second notice of intent to present a case against respondent to the grand jury, this time for two counts of aiding and abetting first degree murder and two counts of aiding and abetting felony murder. On July 15, 1991, the grand jury convened and indicted respondent on all four counts.

Respondent thereafter moved to dismiss the indictment because it was neither timely under Minn.R.Crim.P. 8.01 nor in the interest of justice. On September 23, 1991, the trial court granted respondent's motion to quash the grand jury indictment. The court interpreted the rule to mean that when an individual has been charged with a homicide, enhancement of that accusation to the level of first degree murder must occur soon. The court noted the state did not explain why respondent and Bluebird could not have had their cases presented to the same grand jury, either in late 1990 or January 1991. The court concluded a "clear reading" of the rule and its application to this case required quashing the indictment charging respondent with four counts of aiding and abetting first degree murder. The court held the state could proceed against respondent on the basis of

the charges of aiding and abetting second degree murder.

## ISSUES

Did the trial court correctly interpret Minn.R.Crim.P. 8.01 and quash as untimely the state's four-count indictment against respondent for aiding and abetting first degree murder?

## ANALYSIS

Minn.R.Crim.P. 8.01 provides in relevant part:

> If the offense charged in the complaint is a homicide and the prosecuting attorney notifies the court that the case will be presented to the grand jury, * * * the presentation of the case to the grand jury shall commence within 14 days from the date of defendant's appearance in the court under this rule, and an indictment or report of no indictment shall be returned within a reasonable time.

Where an indictment is returned, the complaint is superseded. The rule thus provides a timely probable cause determination by a grand jury because the defendant will not have an omnibus hearing to test the probable cause underlying the complaint.

■■■ The rule's 14-day time limit applies to this case because the state charged respondent with aiding and abetting second degree murder (a homicide), and it notified the court that the case would be presented to a grand jury. While the rule gave the state 14 days after respondent's first appearance in court within which to notify the court that it would present charges of aiding and abetting first degree murder against respondent, the state failed to do so.

■■■ However, Minn.R.Crim.P. 8.01 does not mandate dismissal of the indictment in this case. The filed homicide complaint remains adequate to support respondent's retention. The only right at stake is respondent's right to a timely determination of whether there is sufficient evidence to require him to stand trial. *See State v.*

*Florence,* 306 Minn. 442, 456–57, 239 N.W.2d 892, 902 (1976).

■■■ A delay in holding an omnibus hearing is subject to a speedy trial analysis under *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker,* the United States Supreme Court used a balancing test in which it weighed the conduct of both the prosecution and the defendant. *Id.* at 530, 92 S.Ct. at 2191–92. The Court considered the following four factors: 1) length of the delay; 2) reason for the delay—purposeful or non-purposeful; 3) defendant's assertion of his right; and 4) the prejudice to the defendant during the delay. *Id.* at 530, 92 S.Ct. at 2192. The Court held because the defendant was not seriously prejudiced by more than a five-year delay between the arrest and trial, he did not assert the right to a speedy trial, and he failed to object to two continuances, his sixth amendment right to a speedy trial was not violated even though more than four years of the delay was due to the prosecution's failure or inability to try a co-indictee to present his testimony at the defendant's trial. *Id.* at 533–36, 92 S.Ct. at 2193–95.

In this case, the state presented the case against respondent to the grand jury on July 15, 1991, approximately nine months after respondent's first appearance in court. In light of the 14-day requirement of rule 8.01, the delay may be considered significant. The state claims "conscientious advocacy" as the reason for the delay, arguing the conviction of Lefthand for first degree murder was a necessary prerequisite to the presentation of a grand jury indictment against respondent for aiding and abetting first degree murder. Thus, the state's rationale was purposeful. Respondent appears to have made a demand for a speedy trial, but to have waived his right by agreeing to two continuances, and the postponement of the presentment of a grand jury indictment until after the trial of Lefthand. Respondent does not appear to have been prejudiced by the delay, primarily because the charges in the indictment were not the only charges pending against him. If they had been, and the

state had not met the 14–day time limit, the proper remedy may have been dismissal of the indictment.

Similarly, the Minnesota Supreme Court has held that the trial court does not abuse its discretion by delaying a trial on its own initiative beyond the requested 60–day speedy trial limit where there is good cause or exigent circumstances substantiated by the record. *McIntosh v. Davis*, 441 N.W.2d 115, 119–20 (Minn.1989). The supreme court held this court must review the record de novo to determine whether the trial court used the proper standards for evaluating good cause. *Id.* at 120 (citing *United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984)).

Under either the *Barker* or the *McIntosh* analyses, the trial court appears to have misinterpreted respondent's remedy under rule 8.01. The state's indictment against respondent should stand.

## DECISION

We reinstate the indictment charging respondent with four counts of aiding and abetting first degree murder.

Reversed.