ADVANTAGE CAPITAL MANAGEMENT, individually and on behalf of the State of Minnesota, Petitioner, Respondent, Appellant,

v.

CITY OF NORTHFIELD, Appellant, Respondent,

Anthony D. BECKER, et al., Respondents, Appellants.

Nos. C2–02–1904, C6–02–1923, C5–02–1928.

Court of Appeals of Minnesota.

July 8, 2003.

David Hvistendahl, Mary L. Hahn, Hvistendahl, Moersch & Dorsey, P.A., Northfield, MN, for Advantage Capital Management.

Susan M. Sager, League of Minnesota Cities, St. Paul, MN, for City of Northfield.

Christopher J. Dietzen, Christopher J. Deike, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for Anthony D. Becker, et al.

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and WRIGHT, Judge.

## OPINION

LANSING, Judge.

This is a consolidated appeal from a series of orders in an action seeking a writ of mandamus directing the city to issue a building permit and requesting damages for failure to grant or deny the permit within the time limits prescribed by Minn. Stat. § 15.99, subd. 2 (2002). Because the city acted on the zoning-action application within a properly noticed extension of the sixty-day limit imposed by the statute, we reverse the district court's mandamus order compelling issuance of the permit and approval of the site plan. In light of our holding, the district court's decisions on damages, immunity, intervention, dismissal of parties, and amendment to the petition have no legal impact, and we do not address the challenges to these moot issues.

## FACTS

Fire destroyed a three-unit dwelling on property located at 1016 Forest Avenue in the city of Northfield in February 2001. The property owner, Advantage Capital Management, Ltd., (Advantage) decided to rebuild the dwelling. The applications for the building permit and zoning-action approval necessary for Advantage to rebuild are at issue in this appeal. The property is in an R–2 zoning district, which permits one and two-family residences. When Advantage built the dwelling in 1978, it obtained a conditional-use permit (CUP) to allow a three-unit dwelling in addition to the small cottage already on the property.

Advantage met with city officials after the fire, and, in late February 2001, the city told Advantage that it was unnecessary to reapply for a CUP, but that Advantage must comply with the R–2 district's minimum setback requirements, off-street-parking requirements, and additional regulations. About a month later, Anthony Becker and Rebecca Judge, who live directly north of Advantage's property, submitted a petition on behalf of seventeen neighboring property-owners, requesting that the city council revoke Advantage's CUP.

On April 9, 2001, the city received a building-permit application to reconstruct the dwelling from a construction firm acting on behalf of Advantage. As required by the Northfield Zoning Ordinance, the building permit was submitted with a preliminary building-and-site-development plan. Northfield, Minn., City Code § 34–808(b)(1) (2003). The building plan did not, however, include dimensional parking arrangements or a landscaping scheme as required by the zoning ordinances. *See id.*

The city granted Becker and Judge's request for a hearing on Advantage's CUP. The city notified Advantage in writing of its decision to hold a hearing and informed Advantage that the city would not act on the building permit until it made a decision on the CUP. Following a public hearing, the city rejected the petition to revoke the CUP.

On May 3, 2001, Advantage filed an application for zoning action requesting a site-plan review. The Design Advisory Board (DAB), by resolution, conditionally approved the site plan on May 23, 2001. The approval was conditioned on submission of a revised survey showing building location, approval of a grading-and-drainage plan, specific engineering changes to accommodate seven, nonstacked parking spaces, submission of color samples, and a revised site plan showing the required changes. Advantage submitted the revised site plan the next day.

On the same day the DAB conditionally approved the site plan, Becker and Judge appealed the decision to the city council. Northfield City Code section 34–163(b) provides that DAB review runs concurrently with a zoning request, and the city notified Advantage that a building permit would not be issued until the appeal had been decided.

The city council reversed the DAB's conditional site-plan approval on June 18, 2001. The council found that the proposed configuration of two, five-bedroom apartments would be unique in the city; the increased footprint of the proposed structure, from 800 sq. ft to 3,995 sq. ft., would be disproportionate to the neighboring buildings; the configuration would require on-site parking excessive for the neighborhood, and the proposed extension of a driveway on Lincoln Street might be illegal. The council referred the plan back to the DAB for further review.

The city notified Advantage in writing on June 20, 2001, that it was extending, under Minn.Stat. § 15.99, the sixty-day deadline for final decision on the zoning-action application. On July 3, the DAB met to further consider the site plan. Advantage requested that consideration be postponed until its attorney could be present, and the DAB voted 2–1 to postpone consideration.

On July 11, 2001, Advantage petitioned for a writ of mandamus directing the city to issue a building permit for failure to act within sixty days of a request related to zoning. Advantage named Becker and Judge as respondents in the mandamus action. The district court, relying on the April 9, 2001, submission of the application for a building permit as the date that triggered the sixty-day deadline, concluded that the notice of extension was untimely. The June 20, 2001, extension was, however, within sixty days of Advantage's May 3,

2001, application for zoning action to approve the site plan. The court ordered the city to issue the building permit and to approve the site plan. The court, on its own motion, determined that Becker and Judge were not proper parties to the mandamus action and dismissed them from the proceedings.

The city appealed to this court, and a special-term panel dismissed the appeal as premature because Advantage's allegation of damages had not been decided. *Advantage Capital Mgmt. v. City of Northfield,* No. C8–02–661 (Minn.App. May 21, 2002) (order). Upon dismissal of the appeal, Becker and Judge moved, in the district court, to intervene. The district court denied the motion to intervene as untimely and granted the city summary judgment on Advantage's claim for damages, concluding that the city was immune from damages caused by a violation of Minn. Stat. § 15.99. The city, Advantage, and Becker and Judge all appealed, and the three appeals were consolidated.

During the posthearing proceedings, at a special DAB meeting on July 24, 2001, the DAB denied the site-plan-review application and requested that new plans be submitted to address, among other concerns, the size and height of the proposed buildings.

## ISSUE

Did the district court err in concluding that the sixty-day time limit in Minn.Stat. § 15.99 (2002) for an agency to approve or deny a written request relating to zoning begins to run upon the agency's receipt of a building-permit application?

## ANALYSIS

 To obtain a writ of mandamus, a petitioner must establish that the law clearly requires the performance of the

mandatory or purely ministerial act for which the writ will issue. Minn.Stat. § 586.01 (2002); *McIntosh v. Davis,* 441 N.W.2d 115, 118 (Minn.1989). Whether a petitioner has established the grounds necessary to support the writ is a question of law, which we review de novo. *McIntosh,* 441 N.W.2d at 118.

The district court's writ directing the city to issue Advantage's building permit and to approve the site plan is grounded solely on the city's failure to grant, deny, or extend Advantage's building-permit application within the time limits of Minn. Stat. § 15.99. Under section 15.99 "an agency must approve or deny within sixty days a written request relating to zoning[.]" *Id.,* subd. 2. "Failure of an agency to deny a request within sixty days" in writing with stated reasons "is approval of the request." *Id.* "Agency" includes a city. *Id.,* subd. 1. "An agency may extend the time limit * * * before the end of the initial sixty-day period by providing notice of the extension to the applicant." *Id.,* subd. 3(f).

The supreme court addressed the extension provision of section 15.99 in *Am. Tower, L.P. v. City of Grant,* and concluded that the provisions were unambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312–13 (2001). The court characterized section 15.99 as an act "which establishes time deadlines for local governments to take action on zoning applications." *Id.* at 312. Advantage's mandamus petition was granted on a significantly broader interpretation of the statute's requirement that a city grant or deny a written request relating to zoning within sixty days. Advantage contends that the broader interpretation is correct because the plain meaning of "written request relating to zoning" encompasses the issuance of a building permit. Conversely, the city contends that the plain mean-

ing of "written request relating to zoning" excludes a building permit.

To determine the meaning of a statute, we look first to the language of the statute itself. *See* Minn.Stat. § 645.16 (2002) (setting forth plain-meaning rule). If on its face and as applied to the facts, a statute's meaning is plain, judicial construction is neither necessary nor proper. *Id.; Am. Tower,* 636 N.W.2d at 312. Courts refrain from construing statutory provisions that convey a plain meaning "in order to preserve language as an effective medium of communication from legislatures to courts." *Krzalic v. Republic Title Co.,* 314 F.3d 875, 879 (7th Cir.2002).

The plain-meaning rule presupposes the ordinary use of words that are not technical or defined by statute, relies on conventional rules of grammar, and draws from the full context of the act or statutory provision. *Am. Tower,* 636 N.W.2d at 312 (words and phrases carry plain and ordinary meaning); *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999) (rules of grammar apply to determine meaning); *Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn. 1989) (sections of the statute must be read together to give words their plain meaning).

Although plain meaning is the governing principle in applying all statutory language, Minnesota courts will not give effect to plain meaning if it produces an absurd result or an unreasonable result that is plainly at variance with the policy of the legislation as a whole. Minn.Stat. § 645.17(1) (2002); *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 494 (Minn.1997) (discussing alleged absurdity); *Wegener v. Comm'r of Revenue,* 505 N.W.2d 612, 617 (Minn.1993) (discussing unreasonable result at variance with manifest intention).

If the statutory language is not plain, courts construe the law to effectuate the

intention of the legislature. Minn.Stat. § 645.16. Construction is necessary to ascertain legislative intent when the words of a law are ambiguous, unclear, or not sufficiently explicit. *Id.* To ascertain legislative intent, courts consider factors that include the need for the law, the circumstances of its enactment, the purpose of the statute, the consequences of a particular interpretation, and the contemporaneous legislative history. *Id.*

By its terms, the sixty-day-response rule of section 15.99 applies to "a written request relating to zoning, septic systems, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action." Minn.Stat. § 15.99, subd. 2. The specificity of the three listed subjects—zoning, septic systems, and expansion of the metropolitan urban service area—indicates that the statute is tailored to particular actions. But the use of the phrase "relating to" suggests the broader application on which Advantage relies.

■ A "zone" is generally defined as "[a] section of an area * * * established for a specific purpose, as a section of a city restricted to a particular type of building, enterprise, or activity." *American Heritage Dictionary* 2004 (4th ed.2000). "A *zoning* statute or ordinance is one which regulates by districts the building development and uses of property." *Orme v. Atlas Gas & Oil Co.*, 217 Minn. 27, 32, 13 N.W.2d 757, 761 (1944). Zoning involves "governmental regulation of the uses of land and buildings according to districts or defined areas." 8 E. McQuillin, *Municipal Corporations* § 25.07 (3d ed.2000). Whether a building permit is a request "relating" to zoning, requires us to determine if zoning "bring[s] into or link[s]" building permits "in logical or natural association." *See American Heritage Dictionary, supra* at 1472 (defining "relate" as

"to bring into or link in logical or natural association").

■ "Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established." *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 223, 199 N.W.2d 158, 160 (1972). Minn.Stat. § 16B.61 (2002), a provision of the Uniform Building Code, which has been adopted in Minnesota, provides for "a code of standards for the construction, reconstruction, alteration, and repair of buildings," including structural materials, design and construction materials, fire protection, health, sanitation and safety. This concern with structural, engineering, and safety standards in the construction process differs qualitatively from the regulation of land use within certain districts or defined areas included in the definition of zoning.

In determining whether the disputed language, "written request relating to zoning," has a plain meaning, we also look to the full context of the language in the act or provision. *Christensen v. Dep't of Conservation, Game, and Fish*, 285 Minn. 493, 499–500, 175 N.W.2d 433, 437 (1970) (observing that statutes must be read as a whole and that meaning should be ascertained from context); *City of St. Louis Park v. King*, 246 Minn. 422, 428–29, 75 N.W.2d 487, 492 (1956) (noting that court should consider meaning of word and phrases "by inquiring into the sense of their employment [and] in the connection in which they are used"). Subdivision 3(b) of section 15.99 restates the scope by specifically referring to "an action relating to zoning." By preceding "relating" with "an action," section 15.99 appears to limit the scope of "relating to zoning" to the zoning

application actions referred to in *Am. Tower,* 636 N.W.2d at 312.

To the degree that the meaning of section 15.99 is not explicit in its application, however, its meaning must be ascertained by looking to the intention of the legislature. Minn.Stat. § 645.16. Legislative intent may also be used to resolve an ambiguity of language that is "subject to at least two meanings, one broad and one narrow." *State v. Stevenson,* 656 N.W.2d 235, 238 (Minn.2003). Ambiguity, in the context of statutory interpretation is not, however, confined to situations in which the same word is capable of meaning two different things, but " * * * describe[s] any kind of doubtful meaning of words, phrases, or longer statutory provisions." *Black's Law Dictionary* 79 (7th ed.1999) (defining ambiguity as an uncertainty of meaning or intention). This definition of ambiguity is consistent with the statutory canons that permit construction when the words of a law are ambiguous, unclear, or not sufficiently explicit. Minn.Stat. § 645.16.

The underlying purpose of the statute is to "establish[ ] time deadlines for local governments to take action on zoning applications." *Am. Tower,* 636 N.W.2d at 312. The legislative history of section 15.99 provides specific information on the use of the term "zoning." During senate floor debate, the senate version of the bill was amended to delete a reference to the generic term, "land use," and replace it with the more precise term, "zoning." *Senate Floor Debate on S.F. No. 1246* (May 2, 1995) (A-4 Amendment).

Interpreting "written request relating to zoning" to apply to zoning-application actions rather than all land-use decisions that might be tangentially connected to zoning, would permit agencies to reasonably apply the provision and reasonably respond within the permitted time limit.

To force agencies to consider building-permit applications and other land-use permits and approvals as triggering section 15.99 would frustrate the legislative intent of ensuring timely compliance by the city in notifying the landowner whether a particular zoning action is allowable.

█ In light of the legislative history, purpose, and effect of the competing interpretations, we conclude that "a written request relating to zoning" is a request to conduct a specific use of land within the framework of the regulatory structure relating to zoning or, in other words, a zoning application.

This interpretation of section 15.99 is consistent with the cases that have applied the sixty-day rule to special-use permits, conditional-use permits, variances, and site-plan approval that relate specifically to zoning. *See, e.g., N. States Power Co. v. City of Mendota Heights,* 646 N.W.2d 919, 925 (Minn.App.2002) (applying statute to CUP request for power line); *Am. Tower,* 636 N.W.2d at 313 (applying statute to application for CUP to build telecommunications towers); *Demolition Landfill Servs., LLC, v. City of Duluth,* 609 N.W.2d 278, 281 (Minn.App.2000) (applying statute to special-use permit request for landfill), *review denied* (Minn. July 25, 2000). Advantage's site-plan application, which was submitted on May 3, 2001, constituted such a request. *See* Northfield, Minn., City Code § 34-771 (2003) (defining a site plan as "a plan, to scale, showing uses and structures proposed for a parcel of land as required by the regulations involved"). Advantage's earlier application for a building permit, however, did not.

The district court erred in concluding that Minn.Stat. § 15.99 governed the city's response to the building-permit request submitted by Advantage. The sixty-day period to approve a written request relat-

ing to zoning did not begin to run until May 3, 2001, when Advantage submitted the zoning-action application for site-plan review. Therefore the city's June 20, 2001, letter stating that the city was choosing to extend the deadline for a final decision on the site plan, operated as a timely extension under section 15.99.

Because we reverse the district court's grant of a writ of mandamus ordering the city to issue a building permit, we do not address the challenges to the district court's decisions on damages, immunity, intervention, dismissal of parties, or amendment to the petition. In light of our decision, these issues are moot.

## DECISION

The time limits in Minn.Stat. § 15.99, subd. 2 (2002), begin to run from the submission of an application for a zoning action and not from the submission of an application for a building permit. We reverse the district court's writ of mandamus directing the city to issue Advantage a building permit and to approve the site plan.

**Reversed.**