MOTOKAZIE! INC., et al., Appellants,

v.

RICE COUNTY, Minnesota,
et al., Respondents.

No. A12–0735.

Court of Appeals of Minnesota.

Dec. 17, 2012.

Jack Y. Perry, Diane Bratvold, Jason R. Asmus, Briggs & Morgan, P.A., Minneapolis, MN, for appellants.

Scott T. Anderson, Tessa S. Kowalski, John P. Edison, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondents.

Considered and decided by HOOTEN, Presiding Judge; PETERSON, Judge; and HUSPENI, Judge.*

## OPINION

HOOTEN, Judge.

Appellant Motokazie! Inc., sought to build a motorsports facility in Rice County that would include land uses not allowed under county zoning laws. Motokazie and co-appellant Portinga Brothers LLC (Portinga) applied for a text amendment to Rice County Zoning Ordinance (RCZO) § 507.05(I) so that the uses they desired could be conditionally permitted. The Rice County Board of Commissioners (the board) considered the proposal and voted three-to-two in favor of the proposed change. However, RCZO § 503.04(E)(10), a supermajority ordinance, requires four votes in favor of an "action for approval" of a zoning amendment, and the amendment was deemed defeated.

Motokazie brought an action against respondents Rice County and the board seeking a writ of mandamus and declaratory judgment, arguing that: (1) the zoning amendment was actually approved by the three-to-two vote because Minn.Stat. § 375.51, subd. 1, dictates that a simple majority approves such amendment and (2) the zoning amendment was automatically approved under Minn.Stat. § 15.99, subd. 2(a), because it was not approved or denied within 60 days. The district court denied relief on both arguments. We affirm.

## FACTS

Motokazie seeks to develop "a $2.6 million, 131–acre motorsports park in Rice County along Interstate 35 that would cater to snowmobiles, all-terrain vehicles (ATVs), motorcycles, go karts and other smaller motorized vehicles." Property in "agricultural" or "urban reserve" districts, including the majority of the property along Interstate 35 in Rice County, may be permitted for "organized motor sports" as a conditional use. The "[o]rganized motor sports" use category "includes ATV trails, motorcycle tracks or trails, truck trails and tractor pulling but not auto or other vehicle racing, tracks or events." RCZO § 507.05(I). As a result, some of Motokazie's desired uses—specifically snowmobile and go-kart racing—would not be allowed under Rice County ordinances, even if it were granted a conditional use permit (CUP) for organized motorsports.

In order to pursue its desired uses, Motokazie submitted an application for an amendment to the text ("text amendment") of the Rice County ordinances on September 6, 2011. The application sought to include these proposed uses in the definition of organized motorsports, so that a property owner in the correct district could seek a CUP for those uses. The

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

signature of a county resident, which is required by Rice County ordinances, was provided by Portinga on September 16, 2011.

On September 21, 2011, representatives of Motokazie and Rice County met to discuss how to proceed and developed a proposed timeline for the approval process. This written timeline, which was acknowledged by both parties, listed the steps needed to move forward with the project and referenced a board meeting regarding the text amendment on November 22, 2011, with an accompanying notation "needs a super majority vote." At the November 22 meeting, the board voted three-to-two in favor of the amendment, but it was deemed to have failed in accordance with RCZO § 503.04(E)(10), which states that "action[s] for approval [of zoning amendments] by the County Board shall not be less than a four-fifths (4/5) vote of its members."

On November 30, 2011, Motokazie filed a verified petition for a writ of mandamus and complaint for declaratory judgment and other relief, which argued (1) that its request for a text amendment was "actually approved" by the three-to-two vote because the supermajority ordinance was in conflict with Minn.Stat. § 375.51, subd. 1, and was therefore invalid, and (2) that its request was "automatically approved" because Rice County did not "approve or deny [it] within 60 days" as required by Minn.Stat. § 15.99, subd. 2(a). Motokazie sought writs of mandamus on automatic and actual approval directing the board to approve the text amendment, mandamus damages for the failure to approve the text amendment, and declaratory judgments

that the text amendment was approved both actually and automatically.[1] The district court granted summary judgment for Rice County on these claims. This appeal follows.

## ISSUES

I. Did the district court err in deciding that the supermajority voting requirement in Rice County ordinances is valid?

II. Did the district court err in deciding that Minn.Stat. § 15.99 did not result in automatic approval of appellants' proposed text amendment?

## ANALYSIS

"When interpreting a statute, [this court] first look[s] to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (citation and quotation omitted); *see also Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 539 (Minn.2007). "Under the basic canons of statutory construction, we are to construe words and phrases according to rules of grammar and according to their most natural and obvious usage[.]" *ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 419 (Minn.2005). If the language of a statute is plain and unambiguous, we must enforce its plain terms. Minn.Stat. § 645.16 (2012); *Hans Hagen Homes*, 728 N.W.2d at 539.

 "'Ordinances ... are presumed to be valid, and are not to be set aside by

---

1. Motokazie also sought a declaratory judgment that the board's decision to deny the text amendment was arbitrary and capricious. In granting summary judgment to respondents on all other claims, the district court

stated that this claim was "unaffected." So that immediate appeal of the district court's judgment could be taken, the parties stipulated to dismissal of this remaining claim.

the courts unless their invalidity is clear.' " *Bolen v. Glass,* 755 N.W.2d 1, 5 (Minn. 2008) (quoting *State v. Taubert,* 126 Minn. 371, 372, 148 N.W. 281, 282 (1914)). "The party attacking the validity of an ordinance has the burden of proof." *In re Khan,* 804 N.W.2d 132, 142 (Minn.App. 2011) (citing *State v. Perry,* 269 Minn. 204, 206, 130 N.W.2d 343, 345 (1964)). This court reviews zoning actions "to determine whether the zoning authority was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination." *In re Stadsvold,* 754 N.W.2d 323, 332 (Minn.2008) (quotation omitted).

### I. Did the district court err in deciding that the supermajority voting requirement in Rice County ordinances is valid?

■ Appellants proposed an amendment to the text of Rice County's zoning ordinance, specifically RCZO § 507.05(I). The board is authorized to "adopt amendments to the zoning ordinance" according to several provisions. RCZO § 503.04. One such provision, titled "County Board action required," states that "[t]he County Board shall take action on the proposed amendment following receipt of the recommendations from the Planning Commission. Said action for approval by the County Board shall be not less than a four-fifths (4/5) vote of its members." RCZO § 503.04(E)(10). Appellants' proposed text amendment received three votes in favor and two votes against, but the amendment was deemed to have failed because of section 503.04(E)(10). Appellants argue that the amendment was actually approved because state law dictates that simple majority votes enact an amendment.

In any instance in which a county board is authorized by law to enact ordinances, the ordinances shall be adopted in the manner prescribed in this section except as otherwise provided by law.... Every county ordinance shall be enacted by a majority vote of all the members of the county board unless a larger number is required by law.

Minn.Stat. § 375.51, subd. 1. Appellants argue that this language does not authorize the use of an ordinance to increase the number of votes required to enact a county ordinance because such a change would have to be "required by law" and an ordinance is not a law. Appellants further argue that even if an ordinance is a law, the county is not authorized to enact the supermajority requirement at issue here. Finally, appellants argue that Rice County's supermajority ordinance conflicts with Minn.Stat. § 394.312 (2012), which required that "procedures for the administration of official controls" be "brought into compliance" with certain amendments to the state zoning code by August 1, 1978. Respondents argue that municipalities are authorized to enact procedural requirements necessary to exercise duly delegated authority. Respondents further argue that statutes, caselaw, and common usage support the conclusion that ordinances are laws.

■ "Both counties and townships are entities of state creation and have only the powers conferred to them by the state." *Altenburg v. Bd. of Sup'rs of Pleasant Mound Twp.,* 615 N.W.2d 874, 880 (Minn. App.2000), *review denied* (Minn. Nov. 21, 2000); *see also In re Welfare of J.B.,* 782 N.W.2d 535, 549 (Minn.2010) ("Counties are creations of the Legislature."). "The county governments of this state can exercise only such powers as are expressly granted them by the legislature and such as may be fairly implied as necessary to

the exercise of the express powers." *Calm Waters, LLC v. Kanabec Cnty. Bd. of Comm'rs,* 756 N.W.2d 716, 721 (Minn.2008) (quotation omitted). "An ordinance is invalid if it contains expressed or implied terms that are irreconcilable with a Minnesota statute." *Cnty. of Wright v. Kennedy,* 415 N.W.2d 728, 731 (Minn.App.1987).

■ Respondents argue that authority for the supermajority requirement comes from section 375.51 itself, as well as from the authorization for counties "to carry on county planning and zoning activities." Minn.Stat. § 394.21, subd. 1 (2012). While there is no explicit or specific grant of authority to create procedures and rules for the enactment of these official controls, such authority is clearly contemplated within chapter 394. *See* Minn.Stat. § 394.25, subd. 7(a) (2012) (authorizing a county to adopt "procedures to be employed in land development"); Minn.Stat. § 394.312 (referring to "procedures for the administration of official controls"); Minn. Stat. § 394.37, subd. 4 (2012) (allowing a taxpayer mandamus action "to compel specific performance by the proper official or officials of any duty required by sections 394.21 to 394.37 or by any ordinance adopted thereunder"). Moreover, it is well settled that counties have the authority to exercise not only the powers as are expressly granted to them by the state, but also have the authority to enact such procedural rules and requirements necessary to exercise such powers. *See Calm Waters, LLC,* 756 N.W.2d at 721 (holding that county governments have such powers "as may be fairly implied as necessary to the exercise" of their express powers (quotation omitted)). We conclude that, because chapter 394 authorizes the county to enact procedural controls, the enactment of a supermajority rule as set forth in RCZO § 503.04(E)(10) was within the authority of the county and is not inconsistent with the procedural requirements of section 375.51.

■ In addition to arguing that RCZO § 503.04(E)(10) is without statutory authorization, appellants argue that since an ordinance is not a "law," the ordinance conflicts with section 375.51, subdivision 1, which requires that "[e]very county ordinance shall be enacted by a majority vote of all the members of the county board unless a larger number is required by law." However, it is well-established that ordinances are a subset of laws; the two are not co-extensive, but the former is included in the latter. *Builders Ass'n of Minn. v. City of St. Paul,* 819 N.W.2d 172, 181–82 (Minn.App.2012) ("An ordinance is commonly defined as an 'authoritative law or decree,' especially 'a municipal regulation.'" (quoting *Black's Law Dictionary* 1208 (9th ed.2009))); *see also Mayes v. Byers,* 214 Minn. 54, 63, 7 N.W.2d 403, 407 (1943) ("A city ordinance within its proper scope has the force and effect of law."); *Bott v. Pratt,* 33 Minn. 323, 328, 23 N.W. 237, 239 (1885) ("An ordinance which a municipal corporation is authorized to make, is as binding on all persons within the corporate limits as any statute or other laws of the commonwealth...."). Thus, we conclude that "[a]n ordinance is a local law." *Oakman v. City of Eveleth,* 163 Minn. 100, 106, 203 N.W. 514, 516 (1925). Moreover, we presume that the legislature assumes the common usage of words when it drafts statutes. Minn.Stat. § 645.08(1) (2012) ("[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage...."). As a result, we conclude that "as required by law" includes requirements in ordinances and that section 375.51 allows Rice County to require a supermajority vote of the board to enact a zoning amendment.

Finally, appellants argue that RCZO § 503.04(E)(10) is invalid because it conflicts with Minn.Stat. § 394.312, which states that "[a]ny official controls and any procedures for the administration of official controls which are in existence on August 1, 1974, shall be brought into compliance with Laws 1974, chapter 571, within four years from August 1, 1974." Laws 1974, chapter 571 included an amendment to section 375.51, but did not enact the language relied on by appellants. 1974 Minn. Laws ch. 571, § 47, at 1416–17 (amending section 375.51, subdivision 1, to include the phrase "[a] public hearing shall be held prior to enactment of any ordinance adopting or amending a comprehensive plan or official control as defined in section 394.22"). Thus, section 394.312 did not require any changes to RCZO § 503.04(E)(10). Further, considering our above discussion, RCZO § 503.04(E)(10) is in "compliance with" and does not conflict with section 375.51.

We find that Rice County is authorized to enact procedural controls for amending zoning ordinances, that county ordinances are laws, and that section 375.51 allows a larger number of votes to be required for amendments to ordinances. Therefore, we hold that RCZO § 503.04(E)(10) is valid and enforceable, and that appellants' proposed text amendment was validly defeated because it did not receive the supermajority vote necessary for its enactment.

**II. Did the district court err in deciding that Minn.Stat. § 15.99 did not result in automatic approval of appellants' proposed text amendment?**

Appellants argue that the proposed text amendment was automatically approved because the board did not deny the amendment within 60 days of submission.

[N]otwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning, septic systems, watershed district review, soil and water conservation district review, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

Minn.Stat. § 15.99, subd. 2(a). This statute is applicable to the board. *Id.,* subd. 1(b) (2012) (including counties in "[a]gency" for the purpose of this section). "Request," somewhat circularly, is defined as "a written application related to zoning, septic systems, watershed district review, soil and water conservation district review, or the expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action." *Id.,* subd. 1(c) (2012). "[T]he purpose of [section 15.99,] subdivision 2 was to establish 'deadlines for local governments to take action on zoning applications.'" *Hans Hagen Homes,* 728 N.W.2d at 543 (quoting *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001)).

Appellants argue that the 60–day rule requires approval of the requested amendment and that it is undisputed that respondents did not comply with the 60–day rule. Respondents respond that the 60–day deadline was extended by Motokazie's agreement to a timeline that went beyond 60 days and by an e-mail from a county official indicating that the decision would come after the 60–day deadline had passed. Appellants dispute that these alleged extensions satisfy the statutory requirements.

Respondents' argument that the deadline was extended is based on an exchange of a timeline created by the parties during the September 21, 2011 meeting. The day after that meeting, a consultant employed by Motokazie e-mailed a written timeline for the approval process to a county official. This timeline indicated that the final approval or denial of the request would occur at the November 22, 2011 board meeting. A county employee responded to the timeline via e-mail with handwritten comments, but did not address the 60–day deadline. Neither party was aware of the potential application of the 60–day rule; Motokazie provided an affidavit indicating that it was not aware of section 15.99 or its deadline and respondents indicated that they did not believe that section 15.99 applied to text amendments.

 Under section 15.99, "[a]n applicant may by written notice to the agency request an extension of the time limit." Minn.Stat. § 15.99, subd. 3(g) (2012). Similarly, a county "may extend the time limit . . . before the end of the initial 60–day period by providing written notice of the extension to the applicant. The notification must state the reasons for the extension and its anticipated length, which may not exceed 60 days unless approved by the applicant." Id., subd. 3(f) (2012). Respondents argue that a county employee notified Motokazie that the decision would come at the November 22 meeting because the packets for an earlier meeting were to be sent before the planning commission decision that necessarily preceded the board's decision. But this putative notification was given verbally at the September 21 meeting, and therefore was not stated on the purported written notification. Further, the exchange of the timeline does not appear to constitute either a request for an extension by appellant, which did not even know about the deadline, or a notification by respondent, which did not believe the deadline applied. We do not believe that this exchange constituted a written notice of an extension or a request for an extension.

 The parties' central dispute is whether section 15.99 applies to appellants' proposed text amendment. The question is whether a text amendment application is "a written request relating to zoning . . . for a permit, license, or other governmental approval of an action." Id., subd. 2(a). This appears to be a question of first impression. Minnesota courts have considered applications for rezoning, subdivision applications, CUPs, and platting to fall within this statutory definition. See Johnson v. Cook Cnty., 786 N.W.2d 291 (Minn.2010) (rezoning); Calm Waters, LLC, 756 N.W.2d at 716 (subdivision application); Am. Tower, L.P., 636 N.W.2d at 309 (CUP); Tollefson Dev., Inc. v. City of Elk River, 665 N.W.2d 554 (Minn.App. 2003) (rezoning and preliminary plat), review denied (Minn. Sept. 24, 2003). However, with one exception, there has been little discussion of the reasons these actions fall within the statutory language. That exception involved an application for a building permit and site-plan review. Advantage Capital Mgmt. v. City of Northfield, 664 N.W.2d 421, 423 (Minn. App.2003), review denied (Minn. Sept. 24, 2003). In that case, this court limited "written request relating to zoning" to mean "zoning-application actions rather than all land-use decisions that might be tangentially connected to zoning." Id. at 427. Further, this court concluded that " 'a written request relating to zoning' is a request to conduct a specific use of land within the framework of the regulatory structure relating to zoning or, in other words, a zoning application." Id.

Appellants argue that the plain meaning of "request relating to zoning" includes a

request for a text amendment to a zoning ordinance. Respondents argue that a request for a text amendment is not a "request relating to zoning" under section 15.99, in light of *Advantage Capital.* Indeed, this text amendment request does not involve "a request to conduct a specific use of land" because, had the proposed amendment been approved, appellants would still be required to submit a request for a CUP in order to conduct its desired activities on the land. Further, the text amendment request is not "within the framework of the regulatory structure relating to zoning" because it seeks to alter the regulatory framework itself. Based on the plain text of section 15.99, subdivision 2(a), which applies to a "request relating to zoning," we conclude that appellants' proposed text amendment constitutes such a request, in that appellants are asking the board to take some action loosely pertaining to zoning.

Respondents also argue that section 15.99 does not apply to this request because a text amendment is not a "permit, license, or other governmental approval of an action." Text amendments to a zoning ordinance are not permits or licenses, so we must determine whether a text amendment is a "governmental approval of an action." Since this language is not clear as applied to the particular facts of this case, section 15.99 is ambiguous. *See* Minn.Stat. § 645.16 (2012) (requiring application of the plain language of the statute "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity"). Thus, we consider the canons of interpretation and the legislative intent behind the statute.

One particularly relevant canon of construction is ejusdem generis, the idea that "general words are construed to be restricted in their meaning by preceding particular words." Minn.Stat. § 645.08(3) (2012). Ejusdem generis is premised on

the idea that all words in a statute must be given full effect.

> [W]here specific words enumerating members of a class are followed by general words capable of including the class and others the former would be rendered meaningless if the latter were given their full and natural meaning, since the latter include the former, and that the incompatibility should be reconciled by construing the general words as referring to the same kind as those enumerated by the specific words, and thus give meaning to both.

*Emp'rs Liab. Assur. Corp. v. Morse,* 261 Minn. 259, 264–65, 111 N.W.2d 620, 624–25 (1961) (quotation omitted). Thus, the phrase "other governmental approval of an action" in section 15.99 "acquires meaning in the context" of the other explicitly included categories. *See State v. Moore,* 699 N.W.2d 733, 738 (Minn.2005) (applying ejusdem generis to statutory interpretation of "great bodily harm").

We note again that section 15.99 has been applied to applications for rezoning, subdivision applications, CUPs, and platting, in addition to permits and licenses. There are two important characteristics of these applications. First, they are specific and particularized to the property for which the application is made. Second, they allow the applying party to undertake some specific action on the property that was not previously allowed and for which governmental approval is necessary. These requests only require the application of the criteria for the desired use to the circumstances involved and are thus quasi-judicial or quasi-legislative decisions.

■ But a text amendment to a zoning ordinance is different in character, on both points. First, amending the text of a zoning ordinance in the fashion requested here would apply to all properties of that type in the county, rather than the specific property to be permitted, licensed, subdi-

vided, or rezoned. Therefore, a text amendment, which alters and allocates property uses, is a pure exercise of the legislative power of the county. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981) ("[I]n adopting or amending a zoning ordinance, a municipality acts in a legislative capacity...."). Second, approval of this request would not allow the applying party to undertake an action, rather the request is for the government to take an action. Moreover, even if this request was approved, appellants would still be required to seek a CUP for organized motorsports in order to move forward with the desired uses. Because a "governmental approval of an action" must be of the same character as a permit and license, a text amendment, which is of a different character than a permit or a license, is not included in section 15.99.

In addition, the supreme court has expressed several policy goals for section 15.99 that indicate it should not be applied to a text amendment. *See Hans Hagen Homes*, 728 N.W.2d at 543–44. In that case, the court held that the automatic approval penalty did not apply when the city merely failed to state its reasons for the decision. *Id.* The court indicated that section 15.99 should be interpreted narrowly, noting that "statutes that are penal in nature are construed narrowly against the penalty" and that "the legislature intends to favor the public interest as against any private interest." *Id.* at 543 (quotation omitted). In particular, the court noted that an amendment to a zoning ordinance approved by operation of section 15.99 could be considered arbitrary because "[t]he automatic approval penalty would result in an approval without any reasons." *Id.* at 544 n. 4. Moreover, this legislative change has the potential to af-

fect a great deal of property in Rice County. We believe that it benefits the public interest to have decisions regarding that large class of property to be made with adequate time for a fully deliberated decision. In light of these considerations, we decline to interpret section 15.99 so broadly as to interfere with a county's legislative powers. To conclude otherwise would produce an absurd result in that a single individual could, simply by operation of the penalty provision of section 15.99, change an ordinance that could affect all landowners in the county. *See* Minn.Stat. § 645.17(2) (2012) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable.").

We conclude that a text amendment to a zoning ordinance is not a "governmental approval of an action," and that appellants' proposed amendment was therefore not approved by operation of section 15.99.[2]

## DECISION

Minnesota counties are authorized to enact procedural controls for zoning and Minn.Stat. § 375.51, subd. 1, allows a county to require a supermajority for approval of a zoning ordinance enactment or amendment. We therefore conclude that RCZO § 503.04(E)(10) is valid. Further, an amendment to the text of a zoning ordinance is not a "governmental approval of an action" as contemplated under Minn. Stat. § 15.99, subd. 2(a). As a result, we affirm the decision of the district court that appellants' application for a text amendment was neither actually nor automatically approved.

**Affirmed.**

---

2. Because we decline to hold that appellants' proposal was actually or automatically approved, we decline to address respondents'

argument that mandamus is inappropriate in this case.